[S. F. No. 9896. In Bank.—December 30, 1922.]

MABEL KISH, Appellant, v. CALIFORNIA STATE AUTOMOBILE ASSOCIATION (a Corporation), Respondent.

[1] EMPLOYER AND EMPLOYEE—ACTS OF EMPLOYEE—LIABILITY OF EMPLOYER.—A master's liability, being predicated upon the fact of the employment, he is not responsible for the acts of his servant while the latter is pursuing his own ends, even though the acts could not have been committed without the facilities afforded to the servant by his relation to his master.

[2] ID.—SERVICE WITHIN SCOPE OF EMPLOYMENT—INDIRECT ACTS.—
In order to hold a master liable for the acts of his servant,
it is not necessary that the latter shall be engaged in the direct
performance of the thing which is the ultimate object of his
employment, for also included within the scope of the servant's
employment are those acts which incidentally or indirectly con-
tribute to the service.

[3] ID.—INSTALLATION OF ROAD SIGNS—USE OF AUTOTRUCK OF EM-
PLOYER—COLLISION EN ROUTE TO SUPPER—LIABILITY OF EM-
PLOYEE.—A person employed to install road signs for an auto-
mobile association who had no fixed place or fixed hours of em-
ployment and who was allowed his meals as part of his expense
account and permitted to use an autotruck of his employer in
going to and from his meals, was not at the time of a collision
between the truck and another, engaged in the performance of an
act either directly or indirectly connected with the business
of his employer or incidental thereto, where the same occurred
after he had finished the job of putting up signs for the day
and after he had gone home and while on his way down-town
for supper.

[4] ID.—ACT OF SERVANT—LIABILITY OF MASTER—EVIDENCE—PRIMA
FACIE CASE.—In an action against a master for an injury com-
mitted by his servant, a *prima facie* case is not made out by
mere proof of the relationship between them, but it is also
essential that it be shown that the act was committed within
the scope of the employment.

APPEAL from a judgment of the Superior Court of Fresno
County.  M. F. McCormick, Judge.  Affirmed.

The facts are stated in the opinion of the court.

G. L. Aynesworth and L. N. Barber for Appellant.

Everts, Ewing & Wild and J. R. Fitch for Respondent.

LENNON, J.—This is an appeal from a judgment of a
nonsuit in an action for damages for personal injuries al-
leged to have been suffered by plaintiff as the result of a
collision between an autotruck owned by the defendant and
driven by an employee of the defendant, California State
Automobile Association, and another autotruck in which the
plaintiff was riding at the time of the accident.  The rela-
tionship of employer and employee is admitted by the de-
fendant and this appeal presents the single question of

whether or not the evidence adduced by the plaintiff was sufficient to show that, at the time of the accident, the employee was acting within the scope of his employment. In support of her cause of action the plaintiff relies solely upon the testimony of Kelley, the employee of defendant and the driver of the truck at the time of the collision. The facts as embodied in his testimony, which are pertinent to the point presented, briefly stated, are these: Kelley and one Daughters were employed by the California State Automobile Association in the work of installing road signs, and used in this work a truck of the defendant association. They had no stated hours of employment, the number of hours depending upon the territory to be covered and the trips to be made. While engaged in this work for the association, they were allowed their meals as part of their expense account and were permitted to use the truck in going to and from their meals. On the day of the accident Kelley and Daughters had been installing road signs near Clovis and had finished this particular work at about half-past 5 or 6 o'clock in the evening. Instead of going to supper immediately upon the conclusion of their day's work they rode in the defendant's truck to their home at 147 Coast Avenue, Fresno, to wash and clean up and change their clothes. After they were cleaned up and while they were riding in the defendant's autotruck on their way downtown to get their evening meal, the accident which caused plaintiff's injury occurred.

[1] It is, of course, elementary that the master's liability, being predicated upon the fact of the employment, the master is not responsible for the acts of the servant while the servant is pursuing his own ends, even though the injury complained of could not have been committed without the facilities afforded to the servant by his relation to his master. (26 Cyc., p. 1536; *Stephenson* v. *Southern Pacific Co.,* 93 Cal. 558 [27 Am. St. Rep. 223, 15 L. R. A. 475, 29 Pac. 234]; *Brown* v. *Chevrolet Motor Car Co.,* 39 Cal. App. 738 [179 Pac. 697]; Berry on Automobiles, sec. 684.) Whether or not the master is responsible for the act of the servant at the time of the injury depends, therefore, upon whether the servant was engaged at that time in the transaction of his master's business or whether he was engaged in an act which was done for his own personal convenience or accom-

modation and related to an end or purpose exclusively and individually his own. In other words, if the servant used the automobile of his master not in furtherance of his master's business, but for his own individual use, he is merely a borrower and the relation of master and servant not existing during the course of such use, the master is not liable for his acts. (*Gousse* v. *Lowe,* 41 Cal. App. 715 [183 Pac. 295].)

[2] In determining whether a particular act is within the scope of the servant's employment, it is obvious that if the servant is directly engaged in the duties which he was employed to perform, or if his acts are directly producing the result desired by the master, that the servant is at that time in the course of his employment. It is not, however, necessary in order to hold the master liable, that the servant shall be engaged in the direct performance of the thing which is the ultimate object of his employment, for also included within the scope of the servant's employment are those acts which incidentally or indirectly contribute to the service. (*Hall* v. *Puente Oil Co.,* 47 Cal. App. 611 [191 Pac. 39]; *Jessen* v. *Peterson, Nelson & Co.,* 18 Cal. App. 349 [123 Pac. 219].)

The test, as laid down in *Chamberlain* v. *Southern California Edison Co.,* 167 Cal. 500 [140 Pac. 25], for determining whether or not a particular act was done in the course of the servant's employment "is whether the act was done in the prosecution of the business in which the servant was employed to assist." The act of the servant must be connected directly or indirectly with the business of the employer and be in furtherance of the object for which the servant was employed. In other words, if the act is for the benefit of the employer, either directly or incidentally, the act is within the general scope of the servant's employment, but if the act performed is not in any way connected with the service for which he is employed, but for his own particular and peculiar purpose, then the act is not within the scope of the employment.

[3] Having in mind the primary and principal purpose of the employment of the driver of the truck and his associate—the installation of road signs—we are of the opinion that, at the time of the accident, which occurred after the employees had finished the job of putting up signs for the

day and *after they had gone home* and while they were on their way down-town for supper, the employees were not in the performance of an act either directly or indirectly connected with the business of the employer nor incidental thereto, but were engaged in an act for their own individual and personal convenience, and from which the employer was to derive no benefit.

It may be conceded that the use of the truck for transportation to and from their work to their home was for the benefit of the employer indirectly for the reason that it permitted them to devote more time to accomplish the results of installing road signs, for which they were employed. Also, from the fact that they had what may be termed a "roving commission," having no fixed hours of employment and no fixed place of employment, it may be admitted that their employment commenced when they left the house in the morning and did not terminate until they returned in the evening. This point was, however, the utmost boundary of their employment and was not enlarged by the fact that they were permitted the use of the truck in going to places to get their meals. This was permitted solely for the accommodation of the employees themselves. We cannot assent to the reasoning of plaintiff that because it was necessary for employees to eat and sleep in order to perform the labor for which they are employed that these acts are incidental to their employment.

Kelley and his associate were paid so much per day and their expenses. It was no concern of the employer what they did after returning home, nor can it be inferred that the employer had any control over them after that time. At that time they were through for the day and it was no concern of the employer as to when they ate or where they ate. If, for instance, the employees had decided to defer dinner until after the theater, could it be said that during the interim they were engaged in the employer's business? Or if the employees had concluded that they would go to an adjoining town, twenty or thirty miles away, to get a meal, surely it could not be said that the trip was within the scope of their employment.

Nor do we believe that the inclusion of the employees' meals in their expense account extended the employer's business to that of boarding its employees. To so hold

would be to make the employers business coextensive with the employee's expense account and extend the liability of the employer for acts of a servant as being within the scope of employment to acts having no relation whatever to the actual business of the employer and to the accomplishment of the results for which the servant was hired.

Having in mind the purpose of the employee's employment and the results to be accomplished thereby, the act of the employee in going to dinner, not on his way from work but after having gone home, cannot be said to have any relation to this business either directly or incidentally; it was not in furtherance of the master's business of installing road signs, nor for the benefit of that business, nor was it in the line of the servant's duties in the installation thereof. It was not, therefore, within the scope of his employment.

[4] It is insisted by plaintiff that the evidence adduced having conclusively shown the relation of master and servant, a *prima facie* case was made out of the responsibility of the master which must be overcome by the defendant, and that a nonsuit was, therefore, improper. But to recover against an employer upon the theory of *respondeat superior*, it is necessary for the plaintiff to establish the two distinct facts of (1) the status of master and servant and (2) that the act was done within the scope of the servant's employment. The latter is as important and vital to plaintiff's cause of action as the former. If the same testimony which proved the relationship of master and servant proved that at the time of the act for which it is claimed the master was liable, the servant was not acting within the scope of and in the course of his employment, the *prima facie* case made by plaintiff is rebutted by the very proof offered to prove the first fact. It is not necessary, therefore, for the defendant to negate the master's liability, inasmuch as the plaintiff has done so herself. The proof at that stage lacks an essential element to support plaintiff's cause of action and an order granting a nonsuit is, therefore, proper.

Judgment affirmed.

Lawlor, J., Shaw, C. J., and Sloane, J., concurred.

Mr. Justice Waste, being disqualified, did not participate in the foregoing.