**SMITH v. ROYAL INS. CO., Limited.**

**No. 9850.**

Circuit Court of Appeals, Ninth Circuit.

Jan. 23, 1942.

Rehearing Denied March 11, 1942.

A. B. Bianchi and James M. Hanley, both of San Francisco, Cal., for appellant.

Long & Levit, Percy V. Long, Bert W. Levit, and William H. Levit, all of San Francisco, Cal., for appellee.

Before DENMAN, MATHEWS, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

This suit, which is on a valued policy of fire insurance upon appellant's "leasehold interest" in certain property, is here for the fourth time.[1] The prior appeals were concerned with the question whether appellant had alleged and proved an insurable interest of a kind described in his policy, namely, an estate in the nature of a leasehold. On the last appeal we held that appellant had established his case in

---

[1] The previous opinions are reported in 9 Cir., 77 F.2d 157; 9 Cir., 93 F.2d 143; and 9 Cir., 111 F.2d 667, 130 A.L.R. 812.

that respect, but that the insurer should be given an opportunity to set up such affirmative defenses as might be available to it. The present appeal relates to the proof of these defenses.

The defenses—now interposed for the first time—are (1) misrepresentation, and (2) mutual mistake of fact. As to the first it is alleged that in applying for the policy appellant, through his broker, represented that he had an interest in the property which was terminable only upon the destruction of the house by fire or other casualty. Appellee further alleged that this representation was material to the risk, that it was false, that it was relied on, and that appellee was thus entitled to rescind. Upon the issue of mutual mistake, appellee alleged that the policy was written upon the assumption of both parties that the representation was true. The trial court found in favor of the insurer on both defenses, and entered judgment accordingly.

■ The situation presented by this record is unique. Appellee has not sought or obtained reformation of the policy, and it strenuously denies that this is a case for reformation. It says the insurance contract, as drafted, "is the exact contract that the parties intended to make", but asserts that appellee was induced to make it because it was led to believe that appellant had a tenure of greater dignity than that

which the policy insured. To put it another way, appellee, so it says, was given to understand that appellant had an interest which "ran until the property was destroyed". It would not, it claims, have insured the risk otherwise. Yet in drafting the policy it consciously chose not to describe the interest in the terms represented. The argument appears to prove too much. Presumably the Royal Insurance Company is an experienced and careful underwriter. If it had received positive assurance that appellant's interest ran for the life of his building it is incredible that the company would deliberately have omitted so to characterize the interest in the insurance contract.[2]

On the basis of the record it is virtually impossible to conclude that the representation was anything other than the statement of an opinion or belief based on the available data,[3] or that appellee understood it in any other sense. To prove the making of the representation appellee called its agency superintendent, who had been solicited to procure the writing of the policy. In important respects the statements of this witness are so vague and equivocal as to render his testimony worthless.[4] The evidence of the witness Farr, appellee's assistant manager, is in no better case.[5] If this testimony be taken by its four corners and read in conjunction with the countervailing proof, one is driven to infer that the

[2] On the last trial below counsel for appellee admitted that "prior to the issuance of said policy, both plaintiff and defendant were in doubt as to the proper designation of said interest; and that it was the defendant and not the plaintiff who described the interest of the assured as set forth" in the policy. Counsel now says that this was not an admission of doubt as to the nature or extent of the interest. We think otherwise.

[3] Such was the testimony of appellant's broker, Hanley. We believe the trial judge misconstrued the testimony of this witness.

[4] The witness testified that appellant's broker told Mr. Farr "that this lease ran until the property was destroyed, and exhibited this fire clause in this deed [meaning the 1896 deed] to substantiate that fact". He several times testified positively that he was told that Mr. Smith had a lease. He did not ask to see the lease, was not interested in seeing it, although he was at pains to examine the 1896 deed which he kept two days. Asked whether he was told that the lease was

oral or written, he said "my impression was that there was a written lease, either this or some other time." Also, that he might have been told that the lease could not be produced, "it had been burned up, or something", possibly in the 1906 fire. It is to be observed that Smith, who was supposed to have the lease, did not acquire the property in question until 1928.

[5] Farr's version of the representation was that "Mr. Smith either had a lease or was about to get a lease from the town trustees of Belvedere". Further, that he, Farr, knew when he wrote the policy "that the tenure of Mr. Smith was subject to the conditions in paragraph 5 of the deed of 1896", which deed the witness had examined. One of these conditions is that "neither of the five private residences or cottages now standing upon beach shall be renewed in case of destruction by fire or otherwise and that said cottages shall remain thereon as long as and subject to such conditions as shall be determined by said town."

insurance people were content with the moral risk regardless of what might be the strict legal aspects of the tenure;[6] and that, as appellant contends, both parties were in doubt as to what, exactly, the legal implications of the tenure were. The finding of the trial court on this phase was clearly erroneous.

On the issue of the falsity of the representation, the trial court found that appellant had a "month-to-month tenancy and no more".[7] The court did not find that the representation of the more secure tenure was motivated by an intent to deceive, or that it was negligently made. On the contrary, the view taken was that the representation was made innocently in the belief on appellant's part that it was true. We thus have the rather novel situation of the court's finding the representation to be false on the basis of the very circumstances which induced appellant, in good faith, to believe the contrary. The situation, while not perhaps without precedent, is sufficiently unusual to invite scrutiny.

If appellee would avoid its contract because of the representation, it must of necessity prove its falsity. The burden of proving the defense was upon the insurer. It could not discharge the burden by pointing to circumstances which, on the whole, are as consistent with the truth of the representation as they are with its falsity. In view of the peculiar history of this ancient tenure and the necessarily hearsay character of so much of the evidence pertaining to it, about the most that can now be said with confidence is that appellant's estate was terminable upon the happening of the event described in the policy which is the subject of the suit. Whether the town ever had the legal right to oust these successive occupants short of the occurrence of that catastrophe, or whether by its complacent attitude and evident reliance thereon the town should be assumed to have relinquished the right once possessed, are questions to which the record affords no satisfactory answer. In a sense the problem is one of law or is a mixed question of law and fact. The bulk of the evidence bearing on the subject is of a documentary nature or rests on circumstances concerning which there is no dispute. Accordingly the finding of falsity does not command the strong presumption of verity which usually attends a finding. Equitable Life Assur. Soc. v. Irelan, 9 Cir., 123 F.2d 462. The doubtful situation should have been resolved against the party upon whom rested the burden of proof.

The judgment is reversed and the cause remanded with directions to enter judgment for appellant.

[6] As bearing on the risk, there was knowledge of the rightful occupancy of the premises by appellant and his predecessors for almost half a century, during which from time to time the tenants, with the acquiescence of the owner, made extensive and costly improvements to house and grounds. The house was a show place and a valuable asset to the community. Rent was accepted by the town as much as a year in advance.

[7] It is to be gathered that the court regarded our decision on the last appeal as holding that a tenure of no higher dignity than one from month to month had been established. The opinion can not fairly be so construed. The only question then before us was whether the evidence disclosed any insurable interest in the nature of a leasehold. We were not called upon to decide, and did not decide, whether such estate as appellant had was terminable short of the destruction of his dwelling. However, we have assumed for the purpose of the discussion that the finding below was based on an independent appraisal of the evidence.