### ELLIS v. AMERICAN HAWAIIAN S. S. CO.

#### No. 11621.

Circuit Court of Appeals, Ninth Circuit.

Feb. 12, 1948.

posted on its bulletin board a notice stating that the only safe place of recreation in Manila was the United Seaman's Service Club, a private charitable non-profit organization having a club house and restaurant and swimming pool some ten miles distant from the ship. Following the advice of this notice, appellant and a shipmate, the first assistant engineer, were transported to the United Service Club. While there the two friends had luncheon, appellant drinking three bottles of beer—the size of the bottles not being disclosed. A blood examination in the hospital led to a diagnosis, of which the appellee states: "While we do not here contend that appellant was definitely intoxicated it does appear that his indiscretion may have resulted from the effects of alcohol which is shown by the hospital certificate to have been one milligram of alcohol per cubic centimeter of blood over three hours after the accident."

The club rented to appellant and his companion swimming suits for swimming in the pool and shortly before 3 o'clock in the afternoon they began swimming there. The water in the pool was not full up, there being about four feet of water in the place where appellant was injured while diving from a low spring board about three feet above the surface of the water. Appellant was an expert diver, but on his third dive struck the bottom of the pool a glancing blow with his head which occasioned the injury leading to his disablement.

Appellant was taken to the hospital in Manila where he remained until after his ship had sailed. The Army later flew him to San Francisco where he was again hospitalized, he remaining there from November 18, 1945 to January 6, 1946. He then flew to Los Angeles at a cost of $20, which he paid and for which he claims reimbursement. There he was still under care of the United States public hospital service until October 1, 1946. He was not required to pay anything for the medical care which he received because of his disablement. So far as his ship is concerned, he was off ship duty at the time he was injured at about 3 p. m. He was due to return for either the 5 p. m. to midnight watch or the midnight to 8 a. m. watch that night or the following morning.

David A. Fall, of San Pedro, Cal., for appellant.

L. K. Vermille, Dan Brennan and Overton, Lyman, Plumb, Prince & Vermille, all of Los Angeles, Cal., for appellee.

Before DENMAN, BONE, and ORR, Circuit Judges.

DENMAN, Circuit Judge.

This is an appeal from a decree of the district court denying appellant recovery for wages, maintenance, care, cure and repatriation to his port of shipment based upon his disablement from an injury claimed to have been received in the course of his employment while in Manila, P. I.

Though the testimony of appellant, libelant below, was heard by the district court the facts the appellant there stated are undisputed and hence we are entitled to consider the cause de novo.

Appellant, in the port of San Pedro, California, shipped as third assistant engineer on the S. S. Cape Saunders, signing shipping articles for a voyage to foreign ports for a period not to exceed six months. The vessel arrived in Manila. There the ship

The appellee seeks to support the decree on the following grounds: (1) That the injury received was not in the course of appellant's employment; (2) that the appellant's diving in the pool was wilfull misconduct and (3) that the return of appellant to San Francisco instead of San Pedro, California, was a sufficient performance on behalf of the shipowner of the obligation to repatriate him.

Appellant relies upon the decision of the Supreme Court in Aguilar v. Standard Oil Co., 318 U.S. 724, 63 S.Ct. 930, 87 L.Ed. 1107. That case, 318 U.S. at page 733, 63 S. Ct. at page 935, considers the decision in Collins v. Dollar S. S. Lines, D.C., 23 F. Supp. 395, where the district court held that a seaman on shore leave injured while in a game of baseball was in the employment of the ship at the time of the receipt of his injury, and Smith v. American South African Line, D.C., 37 F.Supp. 262, where the seaman was struck by a motorcycle in a public street about two miles from his vessel. Speaking of these two cases, the Supreme Court says [318 U.S. 724, 63 S.Ct. 935]:

"We think that the principles governing shipboard injuries apply to the facts presented by these cases. To relieve the shipowner of his obligation in the case of injuries incurred on shore leave would cast upon the seaman hazards encountered only by reason of the voyage. The assumption is hardly sound that the normal uses and purposes of shore leave are 'exclusively personal' and have no relation to the vessel's business. Men cannot live for long cooped up aboard ship without substantial impairment of their efficiency, if not also serious danger to discipline. Relaxation beyond the confines of the ship is necessary if the work is to go on, more so that it may move smoothly. No master would take a crew to sea if he could not grant shore leave, and no crew would be taken if it could never obtain it. Even more for the seaman than for the landsman, therefore, 'the superfluous is the necessary * * * to make life livable' and to get work done. In short, shore leave is an elemental necessity in the sailing of ships, a part of the business as old as the art, not merely a personal diversion.

"The voyage creates not only the need for relaxation ashore, but the necessity that it be satisfied in distant and unfamiliar ports. If in those surroundings, the seaman, without disqualifying misconduct, contracts disease or incurs injury, it is because of the voyage, the shipowner's business. That business has separated him from his usual places of association. By adding this separation to the restrictions of living as well as working aboard, it forges dual and unique compulsions for seeking relief wherever it may be found. In sum, it is the ship's business which subjects the seaman to the risks attending hours of relaxation in strange surroundings. Accordingly it is but reasonable that the business extend the same protections against injury from them as it gives for other risks of the employment."

Likewise in the Aguilar case, the Supreme Court disapproves of our decision in Meyer v. Dollar S. S. Lines, 9 Cir., 49 F.2d 1002, 1003, where we held that because the seaman was off duty and taking recreation when he was injured in a "good-natured scuffling with his fellow shipmates," he was not entitled to maintenance and cure, stating that this case "is consonant neither with the liberality which courts of admiralty traditionally have displayed toward seamen, who are their wards nor with the dictates of sound maritime policy." We agree with the dicta of the Supreme Court and hold that the injury of appellant was received in the course of his employment.

On the question whether the diving was wilfull misconduct or gross negligence, there is no evidence that a skillful diver could not have safely negotiated the dive in the four feet of water in the pool. Appellant had twice successfully negotiated the dive and it is our opinion that, assuming negligence, it was neither wilfull nor gross misconduct.

With regard to the $20 cost of transportation from San Francisco to Los Angeles, the articles did not name Los Angeles or San Pedro as the terminus. They provided for no more than a return "back to a port of discharge in the United States."

As in Johnson v. United States, 9 Cir., 160 F.2d 789; Regulation 64 there construed adversely to appellant's contention is a part of the instant articles. We hold that the cost of transportation cannot be recovered.

The decree is reversed and the case remanded for the determination of appellant's wages and maintenance and cure for his injuries.