## MURPHEY et al. v. UNITED STATES.
### No. 12188.

United States Court of Appeals
Ninth Circuit.
Jan. 25, 1950.

Francis E. Harrington, Portland, Ore., William B. Wetherall, San Francisco, Cal., for appellant.

Frank J. Hennessy, U. S. Atty., San Francisco, Cal., Harlan M. Thompson, Asst. U. S. Atty., Sacramento, Cal., for appellee.

Before DENMAN, Chief Judge, and BONE and ORR, Circuit Judges.

DENMAN, Chief Judge.

This is an appeal from a judgment in a suit under the Federal Tort Claims Act denying recovery for the killing on July 12, 1945, of Huldah Murphey, the wife of one appellant and the mother of the three other appellants, by the claimed negligence of a staff sergeant, Paul W. Brander, of the United States Army Air Corps in driving an army truck.

The pertinent provisions of the Federal Tort Claims Act are: " * * * the district court * * * shall have * * * jurisdiction to * * * render judgment * * * against the United States * * * on account of personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable * * * in

744

accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 931(a).[1]

"(b) 'Employee of the Government'.includes officers or employees of any Federal agency, members of the military or naval forces of the United States. * * *

"(c) 'Acting within the scope of his office or employment', in the case of a member of the military or naval forces of the United States, means acting in line of duty." 28 U.S.C. § 941 (1946 Edition).[2]

It is not questioned that the negligence claimed, if proved, would make the sergeant liable in California where the death occurred. The questions before us are, Was there such negligence and, if so, was the sergeant then acting within the scope of his employment?

■ The entire evidence is in two depositions of witnesses taken by the United States and hence warrants our own consideration of its probative value, with due respect to the findings of the court below. Equitable Life Assurance Soc. v. Irelan, 9 Cir., 1941, 123 F.2d 462, 464; Smith v. Royal Insurance Co., 9 Cir., 1942, 125 F. 2d 222, 224, certiorari denied 316 U.S. 695, 62 S.Ct. 1291, 86 L.Ed. 1765; Stork Restaurant, Inc., v. Sahati, 9 Cir., 1948, 166 F.2d 348.

Sergeant Brander was one of about twenty air corps soldiers encamped about three miles from the town of Klamath in the northern part of the state of California. In order to keep up the morale of these encamped men, a truck was provided for nightly visits to Klamath for their "entertainment, movies, etc."

On the night of Mrs. Murphey's death there was an Indian ceremonial, called a Shaker meeting, in a barn which Brander testified, in the government's deposition, was "in the town of Klamath." We accept this testimony of this government witness and consider the statement of Lieutenant Simon's deposition that the meeting was about "two or three blocks" from the town of Klamath as meaning from the center of town, he having testified that his camp was three miles and "two or three blocks" from the "center" of the town. Leaving camp about 9 o'clock in the evening, Brander drove into the town. He parked the truck at some unnamed place. With another sergeant, not produced by the government, he visited a saloon and then started in the truck for the entertainment of the Indian ceremonial in the barn in the town. On the way they met two ladies, friends of the other sergeant, who entered the car to go to the Shaker meeting.

The street on which they were driving led to a bridge beyond which, at a distance of about fifty yards, was the barn in which the Indian ceremonial had been conducted. The bridge was ten feet wide. It had no guard rails. There were two lines of planks for automobile wheels so placed that the truck would travel in the bridge's center. The truck was 6 feet 2 inches wide, thus leaving a clearance on each side of less than two feet to the unguarded sides of the bridge.

As the truck approached the bridge, Brander saw several people entering the bridge. Instead of waiting until they had passed and without dimming his lights, he drove onto the two lines of planking. After traveling some distance, he turned to the right off the planking and drove by the approaching people and on to the place of the ceremonial. Mrs. Murphey was in the group of people crossing the unguarded bridge and fell off and was killed by the fall.

■ We think Sergeant Brander was negligent in crossing the bridge with his headlights shining in the eyes of persons seeing less than two feet clearance on each side of the truck, and that Mrs. Murphey fell off the bridge in attempting to avoid the negligently driven car.

The district court found that Mrs. Murphey was forced off the bridge by the negligence of Sergeant Brander, but found that Brander "was not acting in the line of duty and was not acting within the scope of his office or employment with the United States of America," and that "The

1. 1948 Revised Judicial Code, 28 U.S.C.A. § 1346.

2. 1948 Revised Judicial Code, 28 U.S.C.A. § 2671.

said members of the said Army Air Corp were authorized and directed to park the said vehicle to the side of a building in the said town where the said vehicle was required to remain until the evening's entertainment was over, at which time it was to be used to reconvey the men to the said radar station. *Special permission was required to use the vehicle for the pleasure of the men to go to any place other than Klamath,* and that neither the said Paul W. Brander nor any other member of said Army Air Corp, was authorized to operate the motor vehicle for his or their personal uses, or for any other uses, than that hereinbefore set forth." (Emphasis supplied.)·

Apparently the district court thought that the Indian ceremonial was in "a place other than Klamath" but, as seen, the deposition taken by the government places the barn "in the town of Klamath" as we have found. When the negligence occurred the truck was being driven in the town and was to be parked at the barn, a building in the town.

It is not questioned that it was within Sergeant Brander's line of duty to seek recreation in the town of Klamath. He was authorized by his commanding officer to drive the truck for "pleasure" under "instruction." That officer testified Brander had authority to drive it that night to Klamath for the purpose of transporting "the rest of the boys stationed there into town for entertainment, movies, etc." He also testified that it was "supposed" that the "truck would be parked alongside a [unnamed] building in the town and left there until it was ready to come back," and that Brander was not "free" to use it during the evening.

On the other hand, there is testimony that permission to use the truck for recreation included going to places short distances outside Klamath, which was .done with the knowledge of Brander's superior officers, and that no permission was needed to drive it to the Indian ceremonial.

The government brief concedes that Brander was acting within the scope of his employment .in driving himself and other soldiers into the town of Klamath for their recreation, but contends that such recreational employment of the truck by the sergeant alone could not be a military employment. We do not agree. Improvement of morale of a single soldier is as much military in character as of several. The Judge Advocate General's opinions state that engaging in allowed athletic exercise is within a soldier's line of duty. Howland Opinion of the Attorney General, 1912 p. 686. See also Howland, 684.

In a analogous case of seamen held to the monotony of the ship, as these soldiers were to that of their mountain camp, this court in this same division of judges has held that, in seeking allowed recreation, the seaman was in the course of his employment when at a shallow swimming pool he was injured in a dive. Ellis v. American Hawaiian S. S. Co., 9 Cir., 165 F.2d 999, 1001. In that case we relied upon Aguilar v. Standard Oil Co., 318 U.S. 724, 63 S.Ct. 930, 87 L.Ed. 1107, in which the court stated: "The assumption is hardly sound that the normal uses and purposes of shore leave are 'exclusively personal' and have no relation to the vessel's business. Men cannot live for long cooped up aboard ship without substantial impairment of their efficiency, if not also serious danger to discipline. Relaxation beyond the confines of the ship is necessary if the work is to go on, more so that it may move smoothly. No master would take a crew to sea if he could not grant shore leave, and no crew would be taken if it could never obtain it. Even more for the seaman than for the landsman, therefore 'the superfluous is the necessary * * * to make life livable' and to get work done. In short, shore leave is an elemental necessity in the sailing of ships, a part of the business as old as the art, not merely a personal diversion."

In the Aguilar case the Supreme Court disapproves of our narrow interpretation of the seaman's employment in Meyer v. Dollar S. S. Lines, 9 Cir., 49 F.2d 1002, 1003.

This case concerns specifically allowed amusements, here "movies, etc." in the town of Klamath. We are not holding that

in any case where the soldier is on a frolic of his own he can make the government liable simply because he there found entertainment.

■ We think the overriding purpose in Brander's employment in the use of the truck in the town of Klamath is the improvement of the morale of the soldiers in seeking "entertainment." The "movies, etc." certainly would include the Indian ceremonial. The government being liable as a private person in California, it is liable where the truck was in use for the broad purpose for which it was employed by Brander, even though he had instruction that he was not "free" to use it in a particular manner accomplishing that purpose.

This is the converse of the cases of United States v. Eleazer, 4 Cir., 177 F.2d 914, 918 and Rutherford v. United States, D.C.E.D.Tenn., 73 F.Supp. 867, affirmed, 6 Cir., 168 F.2d 70, where the officers were driving their own cars to or from their homes.

The California law as stated in Loper v. Morrison, 23 Cal.2d 600, 605, 606, 145 P.2d 1, 4, is that in determining whether a claimed employee acts within the scope of his employment, among the factors to be considered are "the intent of the employee, the nature, time, and place of his conduct, his actual and implied authority, the work he was hired to do, *the incidental acts that the employer should reasonably have expected would be done,* and the amount of freedom allowed the employee in performing his duties." (Emphasis supplied.) Among the authorities cited by the California court is the Restatement of Agency, §§ 228-237, of which § 230 states, "An act, although forbidden or done in a forbidden manner, may be within the scope of employment."

Here the uncontradicted testimony is that the employing government, through Brander's superior officers, knew that "as incidental acts" the truck was employed to reach places of entertainment even short distances outside Klamath.

In another California case, Ryan v. Farrell, 208 Cal. 200, 204, 280 P. 945, 946, the law is stated to be: "It is the established rule in this jurisdiction that where the servant is combining his own business with that of his master, or attending to both at substantially the same time, no nice inquiry will be made as to which business the servant was actually engaged in when a third person was injured; but the master will be held responsible, unless it clearly appears that the servant could not have been directly or indirectly serving his master."

Here Brander was seeking the specified entertainment which would improve his military morale. That he was "directly or indirectly serving his master" in so doing is none the less within the scope of that employment, because he was serving his own desire and that of the other sergeant seeking recreation in taking the latter's two lady friends to the ceremonial.

The judgment is reversed and the cause is remanded to the district court to determine the damages, if any, suffered by each of the appellants and to render judgment for each for such amounts.

BONE, Circuit Judge (dissenting).

I cannot agree with the conclusion reached by my associates.

Since the government concedes negligence the only question before us is whether or not the driver of the army truck was, at the time the accident occurred, acting within the line of his duties or the scope of his office or employment so as to create liability on the part of the United States under the Federal Tort Claims Act. That Act establishes liability only "under circumstances where the United States, if a private person, would be liable." Clearly Congress did not intend for the United States, as an employer, to be singled out as standing in some "peculiar relationship" to its employees so as to subject the sovereign to greater liability than that imposed upon an ordinary private employer under the "law of the place."

The Fifth Circuit has held that, as used in the Act, "line of duty" is equivalent to "scope of employment" and is to be determined by the doctrine of respondeat superior in the same manner and to the same extent as the liability of private persons

under that doctrine is measured in the various states. United States v. Campbell, 5 Cir., 172 F.2d 500, certiorari denied 337 U.S. 957, 69 S.Ct. 1532.[1] See also Hubsch v. United States, 5 Cir., 174 F.2d 7. I think that these two cases correctly state the proper rule of law, are in point, and (under California law) should control our decision in this case.

The majority opinion states, "It is not questioned that it was within Sergeant Brander's line of duty to seek recreation in the town of Klamath." I disagree with that conclusion. It avoids the question before us. Perhaps Brander was given "permission" to use the army truck but the majority has apparently confused "line of duty" or "scope of employment" with "permission" or "authority."

The officer in charge testified that the only "permission" given was to use the truck for the purpose of transporting the men to town; it was then supposed to be parked alongside a building there. Evidence that this rule had not been strictly enforced might perhaps be sufficient to suggest implied authority to use it for personal purposes. However, it is immaterial whether or not the driver had "permission" or "authority" to drive the truck from the center of town to the dance because in so doing he was merely using the truck for his own personal pleasure and not in any manner fulfilling his duties of employment. Even if he had *express permission* to use the truck for that purpose his employer would not be liable under recognized uniform respondeat superior rules. On this point see 22 A.L.R. 1400, 45 A.L.R. 480, 68 A.L.R. 1053, 80 A.L.R. 727, 122 A.L.R. 858, Restatement of Agency § 238(b). The California decisions are in accord. Kish v. California State Auto. Ass'n, 190 Cal. 249, 212 P. 27; Kadow v. City of Los Angeles, 31 Cal.App.2d 324, 87 P.2d 906.

In the Kadow case it was held that a policeman, who, out of courtesy, was transporting his superior officer from a police-men's barbecue in Elysian Park to the police station in a city-owned vehicle, was not acting within the scope of his employment. In the Kish case the servant had express authority to use his master's truck to drive to and from meals and the meals were paid for by the master. The purpose of this permitted use was to allow the employees more time to devote to their work. The accident occurred while the driver was on his way downtown to get his evening meal. Judgment of nonsuit in favor of the employer was sustained. In view of the "recreation-morale" theory adopted in the instant case, it is interesting to note that the California court in the Kish case said [190 Cal. 249, 212 P. 29], "We cannot assent.to the reasoning of plaintiff that because it was necessary for employees to eat and sleep in order to perform the labor for which they are employed, that these acts are incidental to their employment."

Section 402 of the California Vehicle Code imposes liability on owners of motor vehicles for acts of drivers who are driving the vehicles with the permission of the owners, without regard to the question of scope of employment. As the trial court correctly pointed out in its opinion, D.C., 79 F.Supp. 925, 928, that statute has no application here because, in the Federal Tort Claims Act, the sovereign surrendered its immunity to suit *only* where the act in question is performed within the scope of (here army) employment. I take it that the majority, despite its discussion concerning the Sergeant's "authority" to drive the vehicle, does not impose liability on the basis of this California imputed liability statute.[2] The decision of the court appears to rest solely on the ground that recreation and pursuit of pleasure are, as a matter of law, a part of a soldier's duty and within the scope of his army employment.

This is a novel doctrine and one which places upon the government (contrary to the plain terms of the Act) a higher degree of responsibility than rests upon private employers. It opens a vast area of gov-

1. For similar holding by Fourth Circuit, see United States v. Eleazer, 177 F.2d 914, 918.

2. See Long v. United States, D.C., 78 F. Supp. 35. See also Hubsch v. United States, supra.

ernmental liability whose boundaries, if any there be, will only be limited by the ingenuity and resourcefulness of our sailors and soldiers in their energetic search for entertainment and diversion. To be sure, soldiers and sailors are permitted to seek and find recreation and enjoyment wholly aside from official duties doubtless with the thought that such "outside" activities will help their morale. A realistic appraisal of such diversions must lead to the conclusion that in general they represent nothing but an expenditure of energies in a restless search for pleasure. To give them the legal status of "duties" incident to the "scope of employment" of our fighting men will invite a veritable Niagara of suits based on causes of action which I believe to be entirely outside the orbit of the Act.

The cases relied upon by the majority which concern seamen's suits for maintenance and cure are not in point. They were based on the long established policy of "encouraging marine commerce and assuring the well-being of seamen." See Aguilar v. Standard Oil Co., 318 U.S. 724, 727, 63 S.Ct. at page 932. Legislation in favor of seamen has always been accorded liberal construction by the courts. A recent restatement of that policy is found in Cosmopolitan Shipping Co. v. McAllister, 337 U. S. 783, 790, 69 S.Ct. 1317, 1321, "The Jones Act [46 U.S.C.A. § 688] was welfare legislation that created new rights in seamen for damages arising from maritime torts. As welfare legislation, this statute is entitled to a liberal construction to accomplish its beneficent purposes."

In support of their position the majority finds an analogy in our Ellis v. American Hawaiian S. S. Co., 9 Cir., 165 F.2d 999. But our holding in that case is not authority for our decision in the instant case. In the Ellis case we see exemplified the traditional spirit of liberality displayed (and required) in dealing with a seaman's claim against his employer for wages, maintenance, care, cure and repatriation to his port of shipment. Our decision was but a reflection of a historic policy which is part of general maritime law—a policy so clearly described by Professor James Henry

Willock. 46 U.S.C.A. The claim of Ellis under maritime law for the relief he sought from his employer is in no wise analogous to a situation where Ellis might have committed an independent tort against a civilian (of the character shown in the instant case) and then an effort be made to impress legal liability on the employer for this wrong.

For similar policy reasons an opinion of the Attorney General concerning allowance of pensions or other disability benefits seems inapposite. So much may also be said concerning the opinion of a Judge Advocate General who was of the view that engaging in "athletic exercises" is within a soldier's line of duty. Even so, this is a far cry from imposing liability on the government for the torts of a soldier merely because he is permitted to "exercise" to aid his morale. Killing a private citizen with an army truck being driven for pleasure purposes is not the equivalent of indulging in bodily exercise for health and morale purposes.

The Federal Tort Claims Act is not in any sense "welfare legislation" and I see no policy reason for the so-called "liberal construction" we have applied to it. To all of the foregoing may be added the further observation that statutes which relinquish the immunity of the sovereign must be strictly interpreted. United States v. Sherwood, 312 U.S. 584, 590, 61 S.Ct. 767, 85 L.Ed. 1058, and cases there cited.

I think that the majority is here assuming that the government somehow stands in loco parentis so far as regards its relationship to members of the armed services. Even if that be true, I take it to be the well established common law rule that parents are not responsible for the torts of their children. Hudson v. Von Hamm, 85 Cal. App. 323, 259 P. 374. Perhaps the instant decision rests, by analogy, upon the "family car doctrine" which imposes liability upon the parent for torts committed by children in the course of their driving the family automobile. See Crittenden v. Murphy, 36 Cal.App. 803, 173 P. 595. But if Congress had intended to create broad liability of that character it would have done so in plain terms and only a tortured con-

struction will expand the Act to include such a principle of law.

Sergeant Brander was, at the time of the accident, engaged in the pursuit of his own personal recreation and pleasure, and even though such pursuit would indirectly tend to contribute to the efficient performance of his duties by aiding his "morale," (and to that end was encouraged and authorized by his superior officer) such use of the army truck was not incidental to his employment and not within the scope of his employment within the permissible limits of the respondeat superior doctrine.

The judgment of the lower court should be affirmed.