**In the Matter of the Complaint of William McLINN, as owner of the F/V FJORD, her engines, tackle, boilers, and equipment for exoneration from, or limitation of liability.**

**In the Matter of the Complaint of Gilbert Jack JOHNSON and Jack Stewart Johnson, as owners of the F/V SUPERSONIC, her engines, tackle, boilers, and equipment, and as owners of one certain Beck 15 foot fiberglass skiff, her engine, tackle and equipment, for exoneration from, or limitation of liability.**

**Frank CHURCHILL, as the Informal Administrator of the Estate of Patrick Churchill and Dale Carlough, Plaintiffs-Appellants,**

**v.**

**The F/V FJORD, etc., et al., Defendants,**

**and**

**The F/V SUPERSONIC, her engines, tackle, apparel, appliances, equipment, apparatus and furniture; Gilbert Johnson, part owner and/or operator of said F/V SUPERSONIC; Jack Johnson, part owner of said F/V SUPERSONIC, Defendants-Appellees.**

**No. 82–3644.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 17, 1983.

Decided Oct. 3, 1984.

---

Gerald W. Markham, Kodiak, Alaska, for plaintiffs-appellants.

James M. Powell, Kenneth F. Brittain, Hughes, Thorsness, Gantz & Powell, Anchorage, Alaska, for defendants-appellees.

Before CANBY, BOOCHEVER, and NORRIS, Circuit Judges.

BOOCHEVER, Circuit Judge:

Plaintiffs Churchill and Carlough sue for wrongful death and personal injury arising from the navigation of three skiffs, two of which collided. The district court granted partial summary judgment to the Johnsons, owners of one of the skiffs, and to their vessel, and entered judgment pursuant to Fed.R.Civ.P. 54(b). Plaintiffs appeal arguing that the owners are liable, alternatively, under an Alaska statute, under the theory of respondeat superior for the acts of their crewman, or for failure to maintain the skiff. Plaintiffs also contend that the Johnsons' vessel, F/V Supersonic, is liable *in rem* regardless of the Johnsons' liability *in personam.*[1] Because we find that Alaska Owner's Civil Liability statute may be applicable we reverse the partial summary judgment and remand for further consideration of the claims.

FACTS

A collision of two skiffs occurred in the channel between Near Island and Kodiak Island, Alaska in the early morning hours of June 30, 1979. One craft, operated and occupied only by defendant Panamaroff (the Panamaroff skiff) was headed in a northeasterly direction. The other craft, operated by Russell McLinn (the McLinn skiff), was headed in a southerly direction. The collision of these skiffs resulted in the death of Patrick Churchill and injury to plaintiff Dale Carlough, both of whom were riding in the McLinn skiff. At the time of the collision, defendant Michael Chichenoff was operating a similar seine skiff (the Chichenoff skiff) in approximately the same direction and approximately the same speed as the Panamaroff skiff. The Chichenoff skiff was to the right of the Pana-

---

1. Plaintiffs' brief also addresses issues relating to the Johnsons' petition for limitation of liability and relating to a joint venture between Chichenoff and Panamaroff. Because the district court found that the Johnsons were not liable *in personam* as a matter of law, it did not decide the limitation of liability issue. We do not believe that it is appropriate for us to address it initially.

The joint venture issue is not properly before this court. That issue pertains to the liability of Chichenoff as to which there has been no final, appealable judgment. 28 U.S.C. § 1291 (1976); *Chacon v. Babcock,* 640 F.2d 221 (9th Cir.1981).

maroff skiff at a distance variously estimated to be from 8 yards to as much as 100 yards. There was no contact between the Chichenoff skiff and either of the other skiffs. None of the skiffs had night running lights and all were allegedly traveling at high speeds in violation of local ordinances.

Mr. Panamaroff had been experiencing engine difficulties and was headed home to Ouzinkie when the accident occurred. Defendant Chichenoff had agreed to accompany his friend Panamaroff through the channel to insure that he did not become stranded if his engine malfunctioned.

Chichenoff operated a seine skiff of the salmon fishing vessel F/V Supersonic; defendants Jack and Gilbert Johnson own both the fishing vessel and skiff. The McLinn skiff had been used for a similar purpose in conjunction with the F/V Fjord, owned by William McLinn, father of Russell McLinn. The fishing vessels were moored in Kodiak during the temporary closure of the salmon fishery.

Plaintiffs, Dale Carlough and Frank Churchill, father of decedent Patrick Churchill, brought suit in admiralty against Russell McLinn, William McLinn, Panamaroff, Chichenoff, Gilbert Johnson and Jack Johnson *in personam*, and against the F/V Fjord and the F/V Supersonic *in rem*. We are concerned in this appeal only with the suit against the Johnsons and the F/V Supersonic. In the district court, the Johnsons moved for summary judgment as to their liability and that of their vessel, the F/V Supersonic, or in the alternative, for limitation of liability to the value of the Chichenoff skiff or barring that, to the value of the F/V Supersonic. Plaintiffs Carlough and Churchill filed a cross-motion for summary judgment on the same issues. The district court granted the Johnsons' motion for summary judgment and denied the other motions. Plaintiffs now appeal the grant of summary judgment to the Johnsons and the F/V Supersonic.

*Standard of Review*

■ In reviewing a grant of summary judgment, the appellate court's task is iden-

tical to that of the trial court. Viewing the evidence in the light most favorable to the party against whom summary judgment is granted, the appellate court must determine whether the trial court correctly found that there was no genuine issue of material fact and that the moving party was entitled to judgment as a matter of law. *Heiniger v. City of Phoenix*, 625 F.2d 842, 843 (9th Cir.1980).

One of the issues in this case hinged on the district court's interpretation of an Alaska statute. Our review of the court's interpretation was contingent on whether we applied a de novo or clearly erroneous standard, about which there was some confusion in this court's prior decisions. To clarify the appropriate standard, we requested en banc consideration, and a majority of the judges of this court voted to hear the matter en banc. The en banc court determined that "questions of state law are reviewable under the same independent de novo standard as are questions of federal law". *In re Complaint of McLinn*, 739 F.2d 1395 at 1397 (9th Cir.1984) (en banc).

*Discussion*

■ Liability in collision cases, such as the present case, is predicated on fault. A non-colliding vessel or its owner may be at fault if some negligence of its crew or deficiency in the vessel brings about an accident between two other vessels. G. Gilmore & C. Black, *The Law of Admiralty* § 7–2, at 486 (2d ed. 1975); J. Griffin, *The American Law of Collision* § 223 (1949). Liability *in rem* may be based on negligent navigation by persons lawfully in possession of a vessel, J. Griffin, *supra*, § 244, at 557, or the violation of some rule or statute prescribing necessary equipment. G. Gilmore & C. Black, *supra*, § 7–3. Liability *in personam* of the vessel owner rests on the doctrine of *respondeat superior*. J. Griffin, *supra*, § 243.

In the present case, plaintiffs Churchill and Carlough assert liability *in rem* and *in personam* based on each of the above delineated theories. They also assert *in per-*

*sonam* liability against the Johnsons under an Alaska statute.

## I. Alaska Owner Responsibility Statute

Churchill and Carlough seek to impose liability upon the Johnsons under an Alaska statute, Alaska Stat. § 05.25.040 (1981). That section reads in pertinent part:

> The owner of a watercraft is liable for injury or damage caused by the negligent operation of his watercraft whether the negligence consists of a violation of a state statute, or neglecting to observe ordinary care in the operation of the watercraft as the rules of common law require. The owner is not liable, however, unless his watercraft is used with his express or implied consent ....

The district court held that whether Chichenoff had the Johnsons' implied consent to use the Chichenoff skiff and was negligent in its operation were questions of fact unsuited for resolution on summary judgment. The court held as a matter of law, however, that section 05.25.040 did not impose liability upon the Johnsons because the Chichenoff skiff was not a "watercraft" within the meaning of the statute. "Watercraft" is defined as:

> ... every description of vessel, other than a seaplane on the water, used or capable of being used as a means of transportation on water and devoted to recreational pursuits unless otherwise expressly provided in this chapter; and excepting vessels having a valid marine document ....

Alaska Stat. § 05.25.100(4) (1981). The district court held that under the plain meaning of section 05.25.100(4), the Chichenoff skiff was not "devoted to recreational pursuits" because it was a seine skiff, "devoted to use as a part of the equipage of the F/V SUPERSONIC for use in commercial salmon fishing."

## A. Certification

■ After filing this appeal, plaintiffs for the first time moved to certify issues concerning the interpretation of Alaska Stat. § 05.25.040 (1981) to the Alaska Supreme Court pursuant to Alaska Appellate Rule 407. Use of certification rests in the sound discretion of this court. *Lehman Bros. v. Schein*, 416 U.S. 386, 391, 94 S.Ct. 1741, 1744, 40 L.Ed.2d 215 (1974).

*Lehman Bros.*, however, provides no clear standards as to when certification should be used. This circuit has used the certification procedure but has not articulated its standards for doing so. *See Queets Band of Indians v. State of Washington*, 714 F.2d 1008, 1009 (9th Cir.1983); *Estate of Madsen v. Commissioner of Internal Revenue*, 659 F.2d 897, 899 (9th Cir.1981); *Mutschler v. Peoples National Bank*, 607 F.2d 274, 278–79 (9th Cir.1979). The Fifth Circuit has indicated that the question certified must be close, and the issue must be important to the state in terms of comity. The certifying court also should consider the possible delays involved and whether the legal issue can be framed to produce a helpful response by the state. *Florida ex rel. Shevin v. Exxon Corp.*, 526 F.2d 266, 275 (5th Cir.), *cert. denied*, 429 U.S. 829, 97 S.Ct. 88, 50 L.Ed.2d 92 (1976); *see also* 1A J. Moore, W. Taggart, A. Vestal & J. Wicker, *Moore's Federal Practice*, ¶ 0.203[5] (2d ed. 1981).

■ We believe that particularly compelling reasons must be shown when certification is requested for the first time on appeal by a movant who lost on the issue below. Ordinarily such a movant should not be allowed a second chance at victory when, as here, the district court employed a reasonable interpretation of state law. In the present case, the issue sought to be certified is only one of many involved in the litigation.[2]

■ It also is not clear that certification would be proper under Alaska Appellate

---

**2.** We judicially note that a request for certification was made to the district court in *Queets Band of Indians* although no mention is made of

that fact in the court's opinion. That case is also illustrative of instances when the only issue involved is a construction of a state statute.

Rule 407. That rule allows certification of issues of law which may be determinative of the cause pending before the certifying court. The Alaska statute in question imposes liability on vessel owners only when the person operating the vessel does so with the express or implied consent of the owner. There is still an unresolved factual issue of whether Chichenoff had the Johnsons' consent. Thus the legal issue of the application of the Alaska statute would not be determinative unless the Alaska Supreme Court interpreted the statute in the same manner as did the district court. We do not believe that certification with its delays would be sufficiently helpful in this situation, and deny plaintiffs motion to certify.

### B. *Applicability of the Statute*

■ Plaintiffs Churchill and Carlough argue that the plain language of the statute does not dictate the interpretation adopted by the district court. They focus on the use of the skiff at the time of the accident, arguing that when the collision occurred, the Chichenoff skiff was "devoted to" recreation. The Johnsons argue that "devoted to" refers to the general use of the skiff, and because it was equipage of a commercial fishing boat, the F/V Supersonic, it was "devoted to" commercial, not recreational, pursuits. The relevant sections of the Alaska statute have not been interpreted by the Alaska Supreme Court and the legislative history is sparse. The plain language of section 05.25.100(4) is subject to either party's interpretation.

Churchill and Carlough cite *Otis Lodge, Inc. v. Commissioner of Taxation*, 295 Minn. 80, 206 N.W.2d 3 (1972), in support of their interpretation. In *Otis Lodge*, the court interpreted the phrase "devoted to" in a tax regulation to mean "chiefly," as opposed to "wholly." *Id.*, 206 N.W.2d at 7. Even if we accept the *Otis Lodge* construction, we do not believe it requires an interpretation that section 05.25.040 applies to the present situation. Plaintiffs do not allege that the Chichenoff skiff was even used "chiefly" for recreational purposes.

Rather, they argue that the skiff was used for recreational purposes at the time of the accident.

In the absence of a history of section 05.25.040 we are left to speculate as to the legislature's purpose in limiting application of the statute to vessels "devoted to recreational pursuits." The statute was passed in 1961, and at that time there would have been doubt as to the legality of a state law affecting the liability of owners of commercial vessels, because of the strong need for uniformity in federal maritime law. *See Southern Pacific Co. v. Jensen*, 244 U.S. 205, 216, 37 S.Ct. 524, 529, 61 L.Ed. 1086 (1917); *Alaska Industrial Board v. Alaska Packers Ass'n*, 186 F.2d 1015, 1016–17 (9th Cir.1951); 1 E. Jhirad, A. Sann, B. Chase, *Benedict on Admiralty* § 112, at 7–35 (7th ed. 1983). Thus, one possibility is that the Alaska legislature intended as expansive an imposition of liability as was constitutionally permissible. Under this theory, a vessel devoted to recreational pursuits at the time of an accident would be covered if within the state's power.

In *Adams v. Montana Power Company*, 528 F.2d 437, 439 (9th Cir.1975), we held that neither non-commercial fishing nor pleasure boating constituted commerce for the purpose of admiralty jurisdiction. We noted that "[i]n the absence of commercial activity present or potential there is no ascertainable federal interest justifying the frustration of legitimate state interests." We concluded that there was no federal maritime jurisdiction over a non-commercial fishing boat accident in an intrastate waterway obstructed at both ends by impassable dams. In the case before us there is no question as to the court's admiralty jurisdiction over a boating accident in the navigable waters of Kodiak harbor. Nevertheless, *Adams* expresses the concern with a state's limited power over commercial maritime activity that may well have restricted the scope of Alaska's 1961 safe boating statute.

This concern is further suggested by the fact that the statute, as initially enacted, applied only to inland waters, defined as

"the water in any lake or river or stream within the territorial limits of this state." 1961 Alaska Sess.Laws ch. 63, § 2(2). It was not until 1976 that the act was amended to include coastal waters "within the territorial limits or under the jurisdiction of the state." 1976 Alaska Sess.Laws ch. 60 § 2.

Moreover, a liberal construction of the statute is indicated by its declaration of policy:

It is the policy of this state to promote safety for persons and property in and connected with the use, operation and equipment of vessels in recreational pursuits in inland waters and to promote uniformity of laws relating thereto.

Alaska Stat. § 05.25.050. The purpose is not to promote safety of "recreational vessels" but the operation of "vessels in recreational pursuits." This indicates an intent to include any vessel not expressly excluded by the terms of the statute, if used for recreation, whether or not its usual function is commercial activity.

Finally we note that the definition of watercraft on which the Johnsons rely excepts from its provisions "vessels having a valid marine document issued by the United States," not vessels customarily used commercially. Alaska Stat. § 05.25.100(4). Under the doctrine of *expressio unius est exclusio alterius*, *see* 2A C. Sands, *Sutherland Statutory Construction* § 47.23, at 123 (4th ed. 1973), non-documented vessels, such as the seine skiffs here involved, would not be excepted from the scope of the statute. *Cf. Andrus v. Glover Construction Co.*, 446 U.S. 608, 616–17, 100 S.Ct. 1905, 1910–11, 64 L.Ed.2d 548 (1980) (where Congress explicitly enumerates certain exceptions to a statute, additional exceptions are not to be implied).

A close question is presented, and we cannot say that the learned trial judge clearly erred. Nevertheless, applying a de novo standard of review, we conclude that the statutory provisions were intended to cover non-documented vessels temporarily devoted to recreational pursuits, even though generally used commercially.

## II. Respondeat Superior Liability

■ Churchill and Carlough argue that the Johnsons are liable for Chichenoff's conduct under the doctrine of *respondeat superior*. The Johnsons are not liable for Chichenoff's alleged negligence unless Chichenoff was acting within the scope of his employment when the accident occurred. An employee's conduct is within the scope of employment if it is of the kind he was employed to perform, it occurs substantially within the authorized time and space limits, and it is actuated, at least in part, by a purpose to further the master's business. *See Oregon v. Tug Go-Getter*, 468 F.2d 1270, 1275 (9th Cir.1972); *Restatement (Second) of Agency* § 228 (1958). The district court held as a matter of law that Chichenoff was not acting within the scope of his employment because he was using the skiff for his own, not his master's, business. The district court also found undisputed that Chichenoff's immediate superior did not expressly authorize Chichenoff's use of the skiff on the night of the accident.

■ The plaintiffs argue that the district court erred on two grounds in holding that Chichenoff was acting outside the scope of his employment. First, they contend that the Johnsons' purpose was served because Chichenoff was coming to the aid of a fellow fisherman, as is the custom in the fishing community. Sometime in the future, plaintiffs argue, the Johnsons will be benefited by aid in return. Second, they argue that Chichenoff's pursuit of recreation is part of his employment as a boost to his morale, as a seaman's shore leave is a part of the business of sailing.

The first argument plainly lacks support. The cases plaintiffs cite in which courts have been willing to recognize a duty of seamen or fishermen to come to the aid of others all involve salvage situations in which failure to aid would have resulted in immediate danger of loss of life or property. *See Allen v. Seacoast Products, Inc.*, 623 F.2d 355 (5th Cir.1980); *The Judith Lee Rose, Inc. v. The Clipper*, 169 F.Supp. 885

(D.Mass.1959); *The Star,* 53 F.2d 890 (W.D.Wash.1931). These cases recognize the duty as one to give aid to others in distress or peril. No such perilous circumstances or immediacy of danger existed in the present case. We refuse to expand the duty to the facts before us.

We also find inapposite those cases cited by plaintiffs in which truck drivers, who aided people in distress while driving along their business routes in the regular course of business, were held to be acting within the scope of their employment. *See Campbell Baking Co. v. Clark,* 175 Ark. 899, 1 S.W.2d 35 (1927); *Jack Cole Co. v. Hoff,* 274 S.W.2d 658 (Ky.App.1954); *Boalbey v. Smith,* 339 Ill.App. 466, 90 N.E.2d 238 (1950). Plaintiffs do not allege in the present case that Chichenoff was pursuing his master's regular course of business or following a regular business route at the time he gave aid to Panamaroff.

In support of the second argument, plaintiffs cite *Fruit v. Schreiner,* 502 P.2d 133 (Alaska 1972) and *Murphey v. United States,* 179 F.2d 743 (9th Cir.1950). The employee in *Fruit* was attending his employer's sales convention and was involved in an accident which occurred when he drove to join out-of-state guests after the business meetings had concluded. The Alaska Supreme Court held that the employee was furthering a purpose of his master. The employer encouraged the employee to socialize with the guests and benefit from their work experience, and the employee's actions were motivated at least in part by this purpose. *Fruit,* 502 P.2d at 142. In *Murphey,* the employer's purpose was held to have been served when a soldier drove an army truck on a recreational excursion. At the time of the accident, the soldier was authorized by a commanding officer to drive the truck for pleasure and was seeking a specified entertainment that would improve military morale. *Murphey,* 179 F.2d at 746.

*Fruit* and *Murphey* are distinguishable. In each case, the employee received authorization or encouragement from the employer to make social contact or pursue recreation. *See also Williams v. United States,* 248 F.2d 492 (9th Cir.1957). Here, plaintiffs do not allege or offer evidence that the Johnsons encouraged Chichenoff to seek recreation in their skiff.

We find *In Re Vest,* 116 F.Supp. 901 (N.D.Cal.1953), persuasive. In *Vest,* the court held that an employer was not liable under the doctrine of respondeat superior when his employee took the employer's fishing boat out at night on a sightseeing tour without express authorization. The court held that the employee had been hired solely to run the boat on daytime fishing trips as scheduled and ordered by the employer. *Id.* at 902. Chichenoff was hired by the Johnsons to work with the F/V Supersonic and its skiff as a fisherman. In the absence of any allegation that they encouraged Chichenoff to pursue recreation in their skiff, we agree with the district court that Chichenoff was not serving a purpose of the master at the time of the collision.

### III. In Rem Liability of the F/V Supersonic

■ Churchill and Carlough argue that even if the district court properly dismissed the suit against the Johnsons, it was error to dismiss the *in rem* suit against the F/V Supersonic. They argue that a vessel may be held liable *in rem* for faults in her navigation committed by any persons lawfully in possession of her. J. Griffin, *supra,* § 244, at 557; *The Barnstable,* 181 U.S. 464, 467, 21 S.Ct. 684, 685, 45 L.Ed. 954 (1901); *California v. Italian Motorship Ilice,* 534 F.2d 836, 841 (9th Cir.1976).[3]

---

**3.** The district court found it undisputed that the Johnsons' skiff operated by Chichenoff did not have proper operating lights, in violation of, *inter alia,* 46 C.F.R. § 25.05–1 (1982). This violation establishes statutory fault on the part of the vessel, and serves as the basis of *in rem* liability. Once statutory fault is established, the rule announced in *The Pennsylvania,* 86 U.S. (19 Wall.) 125 [22 L.Ed. 148] (1874), puts the burden of exoneration on the vessel to show "not merely that her fault might not have been one of the causes, or that it probably was not, but that it could not have been." *Id.* at 136 [22 L.Ed. 148].

The district court found triable issues of fact concerning whether Chichenoff was negligent and had the implied consent of the Johnsons to use the skiff in activities not involving his duties as their employee. If Chichenoff was in lawful possession of the skiff any negligence in its navigation is imputable to the skiff, and possibly to the F/V Supersonic, in an *in rem* action regardless whether he acted as the Johnsons' agent predicating *in personam* liability.

The Johnsons contend that the court lacks jurisdiction over the vessel because the complaint was not verified as required by Supplemental Rule C(2) of the Federal Rules of Civil Procedure and process was never served on the vessel as provided in Supplemental Rule C(3). This court has held that service of process on the vessel by a warrant of arrest is an essential prerequisite for *in rem* jurisdiction. *Alyeska Pipeline Service Co. v. Bay Ridge*, 703 F.2d 381, 384 (9th Cir.1983), *cert. denied,* — U.S. ——, 104 S.Ct. 3526, 82 L.Ed.2d 852 (1984); *Yokahama Specie Bank v. Wang*, 113 F.2d 329, 331 (9th Cir.), *cert. denied,* 311 U.S. 690, 61 S.Ct. 71, 85 L.Ed. 446 (1940). The Johnsons' failure to raise these issues below, however, may have constituted a waiver of the jurisdictional defects, or a consent to the jurisdiction of the court, at least so far as their interest in the vessels is concerned. *See Crane v. Gas Screw Happy Pappy*, 367 F.2d 771, 773-74 (7th Cir.1966), *cert. denied, Borrowdale v. Reuland*, 386 U.S. 959, 87 S.Ct. 1029, 18 L.Ed.2d 108 (1967); *Reed v. S.S. Yaka*, 307 F.2d 203, 204 (3d. Cir.1962), *rev'd on other grounds*, 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448 (1963); *cf. Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19, 80 S.Ct.

1470, 4 L.Ed.2d 1540 (1960) (apparently accepting the owner's letter of agreement to be liable as sufficient to invoke *in rem* jurisdiction). *But see Alyeska*, 703 F.2d at 381, wherein release of the vessel from the custody of the court was held an absolute bar to *in rem* jurisdiction. Because as indicated below we find it necessary to remand for further consideration of the award of summary judgment, it is unnecessary for us to resolve this issue. On remand, plaintiffs may seek to cure the jurisdictional defects by any means the district court finds appropriate.

■ Assuming that the court had jurisdiction over the vessel, another unresolved issue is whether fault in the navigation of a skiff which is part of the equipage of another vessel gives rise to a maritime lien against the main vessel as well as the skiff.

To grant a motion for summary judgment, the district court must find that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The district court's otherwise thorough and well reasoned Memorandum and Order is unilluminating as to either the relevant facts or law concerning plaintiffs' *in rem* claim against the F/V Supersonic, which was dismissed without discussion. In this posture of the case, we are unable to determine whether summary judgment was properly granted. Under similar circumstances, the Supreme Court has remanded a case for further proceedings. *See Carter v. Stanton*, 405 U.S. 669, 671-72, 92 S.Ct. 1232, 1234, 31 L.Ed.2d 569 (1972) (per curiam). Therefore, we vacate the district court's dismissal of the *in rem* action against the

The district court did not address this issue in regard to *in rem* liability of the skiff or the F/V Supersonic. Rather, it addressed the lack of lights as pertains to the negligence of Chichenoff. The district court held as a matter of law that the lack of lights was not a cause of the collision. We agree with this conclusion. Therefore, the record reflects a proper ground for dismissing this statutory fault as a basis for *in rem* liability. *See Calnetics Corp. v. Volkswagen of America, Inc.*, 532 F.2d 674, 682 (9th Cir.), *cert. denied,* 429 U.S. 940, 97 S.Ct. 355, 50 L.Ed.2d 309 (1976).

Plaintiffs also argue that the Johnsons should be held liable *in personam* for their failure to equip their skiff with lights. Plaintiffs contend that the Johnsons knew the skiff was without lights and that the skiff was being used at night, therefore they owed a duty to others either to equip their skiff properly or to prohibit its use at night. The district court did not expressly address or dispose of this issue below. Because we believe that the district court properly found that the failure of the skiff to have lights was not a cause of the accident this theory must fail for lack of causation.

F/V Supersonic and remand for proceedings consistent with this opinion. That portion of the district court's opinion granting summary judgment to the Johnsons is also reversed.

AFFIRMED in part, REVERSED in part and REMANDED.