Beulah Boalbey et al., Appellees, v. J. B. Smith, Appellant.

Term No. 4903.

Opinion filed January 19, 1950. Released for publication February 20, 1950.

TERRELL, SCHULTZMAN & MOORE, of Paducah, and DEWEY & CUMMINS, of Cairo, for appellant.

PEYTON BERBLING, DOROTHY WILBOURN, and ASA J. WILBOURN, all of Cairo, for appellees.

MR. JUSTICE CULBERTSON delivered the opinion of the court.

This is an appeal from three judgments rendered in the circuit court of Alexander county, one of said judgments being in the amount of $600 in favor of appellee, Belle Morgan; and one of said judgments being in the amount of $3,500 in favor of appellee, Earl Trexler; and the other of said judgments being in the amount of $975 in favor of appellee, Jack Trexler; and all being rendered against the defendant appellant, J. B. Smith (hereinafter called defendant). There were two additional plaintiffs in the cause, viz: Beulah Boalbey and John Boalbey, and on the trial of this cause, the plaintiff Beulah Boalbey received a verdict for $15,000, and the plaintiff John Boalbey received a verdict for $3,000, and judgments having been entered thereon, no appeal therefrom appears to have been prosecuted.

The factual situation developed on the trial of this cause disclosed that Harold Crippen, who was employed as a driver salesman by the defendant, J. B. Smith, was on his way to St. Louis in defendant's truck. The defendant appellant was a distributer of Hyde Park beer, and Crippen was carrying a load of empty bottles back to the brewery in St. Louis. It appears that on the night of February 24, 1948, he stopped at North Cairo for food about midnight and there picked up James Elder, who was with him when the accident occurred. Elder simply hitched a ride and was not employed by the defendant. It appears Crippen was driving at a speed of about thirty five miles an hour, and as he proceeded toward his destination when he reached a point about four miles north of Cairo on Route 3, his attention was attracted by a man and a woman on the west shoulder of the road. The man's face was bleeding, and the woman was struggling to get out of the ditch and up on the highway. Crippen observed there was a car off the west shoulder of the road in the ditch. The man standing on the west

467

shoulder of the road signaled Crippen to stop, and after moving north from fifty to seventy five feet, Crippen stopped his truck and left it parked in the east lane on the pavement, and he and his companion ran back to lend assistance to the motorists in distress. The evidence disclosed that Crippen engaged in conversation with the injured motorists and learned from them that someone else was coming to help them and that then he and his companion, James Elder, started back to defendant's truck, and as they were going back to defendant's truck the car in which the plaintiffs were riding crashed into the rear of defendant's truck, which was standing unattended on the traveled portion of the highway.

The narrowed issue presented to us for determination on this appeal is conceded by all parties to the record to be, ''was the agent Crippen within the scope of his employment when doing the act complained of?'' There is no other question to be decided in this case, and the determination of the foregoing question is entirely decisive of this case.

Defendant contends that his agent Crippen was outside the scope of his employment when the accident occurred, since he had stopped his truck upon the traveled portion of the highway and had crossed the road to lend assistance to two injured motorists whose car was in the ditch. He does not deny that Crippen was traveling that highway on the master's business and at his direction, and that it was the regular route for him to take. We have examined the authorities and find that this proposition of law has been decided by the Supreme Court of this State, and has been approved in numerous instances, and that the law, as laid down by our courts is, that going to the aid of an injured motorist on a highway does not take the employee outside the scope of his employment (*Puttkammer v. Industrial Commission,* 371 Ill. 497).

In the *Puttkammer* case, *supra,* the employee had delivered a load of coal for his employer and was driving northwardly back to the coalyard when he reached a point where northbound traffic was obstructed by two automobiles that had been in a collision. He stopped his truck in the east lane and went to the damaged cars where he picked up an injured child, and as he was going toward his truck with the injured child in his arms another northbound automobile struck one of the damaged cars and knocked it against Puttkammer, who was thereby killed. The respondent in that case advanced the same argument as the appellant in this case, *viz:* That the agent was not acting within the scope of his employment at the time of his injury in question. The court did not sustain such an argument, but held that Puttkammer was in the course of his master's business, although at the time of his injury he had left his truck and gone to aid an injured child on the highway. The court in that case, on page 503, said, ''The question is whether he broke the thread or chain of his employment if, as plaintiffs in error assume from the facts stipulated, he went to aid those injured in the damaged automobile and collision. Plaintiffs in error say the facts are equally applicable to an intention to give aid or to an intention to see whether his way was clear, and that speculation as to what his real intention was cannot be resorted to determine his purpose. Neither would take him out of the course of his employment. Giving aid to an injured child on the highway is just as natural and is just as much to be expected from a driver of another vehicle as stopping to water horses drawing his dray, or stopping to get liquid refreshment for himself.'' The court in that case discussed at great length risks incidental to the streets along which the employee must travel in the course of carrying out his master's business, and stated that any act that can reasonably

and fairly be said to be incidental to his employment as a truck driver is an act within the course of and arising out of the employment.

In this case, in view of the *Puttkammer* case, we believe the act done by Crippen in stopping his truck and walking across the road to the injured motorists is one commonly done by truck drivers. There is, without question, a close connection in time and space between this act of Crippen and the act he was called on to do by the defendant, *viz:* drive the truck along this highway; and the defendant could reasonably expect him to aid another motorist when called upon.

The *Puttkammer* case has been referred to and cited with approval in the case of *Olson Drilling Co. v. Industrial Commission,* 386 Ill. 402, and *Public Service Co. of Northern Illinois v. Industrial Commission,* 395 Ill. 238. The tortious conduct upon which the plaintiffs base their complaint was the stopping of the defendant's truck upon the traveled portion of the highway, in violation of the Illinois Statute. It was admitted by the defendant that his agent was driving along that highway in defendant's truck, enroute to St. Louis on business of the defendant. Crippen was, therefore, within the scope of his employment at the time he stopped the truck on the highway. Since he was within the scope of his employment when he stopped, and since it was the stopping of the truck on the traveled portion of the highway that caused plaintiffs' damage, we believe it was immaterial whether Crippen was still in the truck, or had left the truck and gone to the aid of an injured motorist at the time the automobile in which plaintiffs were riding struck the rear of defendant's truck. The fault lies in the stopping of the vehicle on the highway, and not in leaving the truck to aid a third party. It seems to us and we so hold that Crippen was within the scope of his employment at the time of the accident involved in this case.

The action of the trial court of Alexander county in denying the motions for directed verdicts, for judgment notwithstanding the verdicts, and for a new trial, was correct and same is, accordingly affirmed.

*Judgments affirmed.*

BARDENS, P. J., and SCHEINEMAN, J., concur.