**E. L. FARMER & COMPANY, a Corporation, et al., Appellants,**

v.

**Margree BURKETT et al., Appellees.**

No. 6868.

Court of Civil Appeals of Texas.

Amarillo.

May 18, 1959.

Rehearing Denied June 15, 1959.

M. Hendricks Brown and Walter E. Jordan, Fort Worth, for appellants.

M. C. Ledbetter, Morton, and Allison, Steele & Allison, Levelland, for appellees.

PITTS, Chief Justice.

Two separate plea of privilege actions growing out of the same factual situation were consolidated for hearing in the trial court by a stipulated agreement of the parties and are jointly before us on appeal, although separate suits and separate pleas of privilege were filed in the trial court. The venue issues arose out of damage suits filed separately by appellee, Mrs. Margree Burkett, surviving widow of Archie Leon-

ard Burkett, deceased, on behalf of herself and her four minor children, and by appellee, Estell Taylor, surviving widow of Albert Lee Taylor, deceased, on behalf of herself and her one minor child, against appellants, E. L. Farmer & Company, a corporation, and its employee, Howard T. Arnold, alleging damages by reason of several acts of negligence on the part of both appellants that resulted in the death of Archie Leonard Burkett and Albert Lee Taylor at approximately 11:00 o'clock P.M. on November 12, 1957, in Cochran County, Texas, when the automobile in which the two named deceased men were riding was being operated north upon a public highway when it ran into the back end of a truck tractor with a trailer attached stopped on the pavement of the said highway. Appellees further alleged that immediately prior to the said collision the said truck with trailer attached owned by appellant, E. L. Farmer & Company, was being operated north on the same highway by appellant, Howard T. Arnold, who was an employee of appellant, E. L. Farmer & Company, and who was acting in the course of his employment and within the scope of his employment when he negligently stopped the said truck and trailer on the pavement of the said highway at nighttime, thus causing the collision on the highway that resulted in the death of the two named deceased men.

Appellants filed separate pleas of privilege in each case seeking to have the cases transferred to Ector County, Texas, the county of their residences, respectively. Appellees timely filed controverting affidavits alleging their residences respectively to be in Cochran County and seeking to hold venue in Cochran County under the provisions of Section 9a of Article 1995, Vernon's Ann.Civ.St., as well as under the provisions of Secs. 23 and 29a of the said Article.

The trial court without a jury heard the venue issues only, after which it overruled both pleas of privilege in each case by one judgment entered, from which both appel-

lants perfected an appeal and present a joint brief in this court.

The record reveals that, prior to the collision in question, one James C. Brines was driving south at nighttime on the same highway previously mentioned when he met a moving automobile that crowded him off of the highway on his right-hand side and into the bar ditch where his car got stuck in the sand; that he left his car headlights on but that they were shining mostly in the bar ditch; that he sought help from people in several cars that passed but none of them would even stop; that after about an hour Howard T. Arnold came along operating the truck in question with trailer attached and Brines got Arnold's attention long enough to ask him to pull his automobile out of the bar ditch; that while they were talking another car passed going north but did not stop; that immediately thereafter the car that collided with the back end of the trailer attached to appellants' truck came along and the collision in question occurred on the pavement of the highway with such force that it instantly killed both men who were later learned to be Archie Leonard Burkett and Albert Lee Taylor.

There are three controlling questions to be here determined. They are (1) whether or not appellant, Howard T. Arnold, was an employee of appellant, E. L. Farmer & Company, and was engaged within the scope of his employment at the time of the collision in question; (2) whether or not Arnold had stopped his truck with trailer attached on the paved part of the said highway immediately prior to the collision that resulted in the death of the two men; and (3) whether or not Arnold had turned away from the course of his employment and was using his employer's truck to help one James C. Brines get his automobile out of the bar ditch when the collision occurred.

Howard T. Arnold testified in effect that he was an employee of E. L. Farmer and Company and had been for about three years; that on the occasion in question he was driving a truck with a "Spencer tan-

dem float" attached thereto, all of which weighed about 28,400 pounds; that he had been previously sent by his employer to Jal, New Mexico, to move a rig and from there he called his employer after moving the rig for further instructions and was directed by his employer to go from there to Pueblo, Colorado, on a business mission for his employer; that he was privileged to select any route he pleased en route to Pueblo and was on his way there at nighttime on November 12, 1957, when he found a man, later learned to be James C. Brines, running around on the highway in front of him, "hollering and trying to stop traffic" when a car passed them both going north, "Yes, sir. I said to him, 'What's the matter?' And he said, 'I'm stuck, will you pull me?' And I said, 'I can't do you no good, Mister.' I said, 'We'll get run over.' I said, 'Watch it and don't get run over out there.' I could see—he staggered—I had done seen that he was in no position—I wouldn't have pulled him out if I could—if it had been a hard road and a wide road. I didn't—he didn't have no business being on the highway to start with." Arnold further testified, "I hollered at him and told him he had better get out of the road or he was going to get run over and he said, 'Would you pull me out?' and I said, 'No, we'll both get run over.'" Arnold further testified that "I seen I was not going to stop and mess with him"; that he had no intention of stopping and getting his truck stuck like the other fellow's car was stuck. Arnold likewise testified that he had pulled along slowly and talked to Brines about his trouble until he had gotten 150 to 200 feet from where Brines' car was stuck in the bar ditch before the collision occurred. He also testified in Q. and A. form as follows:

"Q. Did you ever give any signal that you were stopping? A. I have tail lights—stop lights on it and I turned my right turn signal on when I first pulled off up there at him, but I had done turned it off. I was going down the road.

"Q. That's when these other vehicles were about a half mile back up the road that you turned that on? A. Yes, sir.

"Q. Did you suddenly decrease the speed of your truck? A. Suddenly stop it, you mean?

"Q. Yes, sir, or did you suddenly decrease the speed of it? A. Decrease it?

"Q. Yes, sir. In other words, when you saw this man out there in the road flagging you down, did— A. Not too suddenly, no sir, just—

"Q. Well, did you— A. — a reasonable amount of stopping.

"Q. Did you apply your brakes? A. Sure, I had to, to stop."

He testified that his brakes had been released and his stop lights were turned off while the car that hit his trailer was still some distance from him, and that his truck and trailer were partly off of the paved part of the highway when the collision occurred but some six or eight feet of his truck and trailer were still extended over on the paved part of the highway when the collision occurred. He drew a sketch of the position of his truck and trailer on the highway at the time of the collision, and the sketch is in evidence.

The testimony of James C. Brines supported much of that given by Howard T. Arnold except that Brines testified that he waved Arnold down but Arnold had gotten approximately 100 yards from where his car was stuck in the bar ditch before he stopped his truck and trailer with part of them on the paved portion of the highway, immediately after which the collision occurred with the right front fender of the approaching automobile hitting the left hind part of the trailer, as a result of which both men in the automobile were instantly killed. Arnold and Brines were the only surviving witnesses who saw the collision. The sheriff of Cochran County, Hazel

Hancock, soon appeared on the scene and his testimony about the physical facts found on the grounds corroborated the testimony of the other witnesses.

■ According to the record no findings of fact or conclusions of law were requested or filed by the trial court. In the absence of findings of fact in a case tried without a jury, it is settled that we must test the validity of the judgment on the assumption that the trial court found every disputed fact in such a way as to support the judgment rendered. Construction & General Labor Union, Local No. 688 v. Stephenson, 148 Tex. 434, 225 S.W.2d 958. Under the facts and circumstances presented here we are required, in determining the sufficiency of the evidence in support of the implied findings of the trial court, to consider only that evidence most favorable to the implied findings upon the issues raised and to disregard entirely all evidence to the contrary. Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S.W.2d 609, 613, 23 A.L.R.2d 1114; North East Texas Motor Lines v. Dickson, 148 Tex. 35, 219 S.W. 2d 795, 11 A.L.R.2d 1065. Under the record presented here every issue raised by the evidence must be resolved in favor of the trial court's judgment. Coker v. Harris, Tex.Civ.App., 281 S.W.2d 100; 3B Tex. Jur. 278, 279, Sec. 873, and other authorities there cited. The judgment of the trial court will be affirmed if there is evidence to support it upon any reasonable theory authorized by law. Connor v. City of University Park, Tex.Civ.App., 142 S.W.2d 706; Humphrey v. Southport Petroleum Co., Tex.Civ.App., 131 S.W.2d 395; Rasberry v. Jones, Tex.Civ.App., 195 S.W.2d 947; La Force v. Bracken, Tex.Civ.App., 163 S.W.2d 239, affirmed 141 Tex. 18, 169 S.W.2d 465.

■ Applying the foregoing rules of law to the facts previously herein shown, the trial court was justified in holding against appellants in each of the three previously stated controlling questions to be determined. In the third and last controlling question mentioned appellants do not contend that Arnold had actually already turned away from his employer's business to help Brines get his car out of the bar ditch when the collision occurred, but appellants contend that Arnold was "preparing to assist" Brines in the matter when the collision occurred. The testimony of Arnold previously herein shown refutes any claim even that Arnold was "preparing to assist" Brines in getting his car out of the bar ditch. Arnold testified that he never intended to help Brines and told him that he would not help him. However, the rule appellants urge and rely upon provides that the employee must have turned away from his master's business and have engaged in something other than his master's business at the time in order to excuse his master from liability in case of a negligent act that resulted in damages done to another. The case of Wood v. Mullins, Tex. Civ.App., 282 S.W.2d 243, 245, cited and relied upon by appellants, states the rule relied upon in the following language:

"It appears to be well established that where the servant actually turns away from the master's business and changes the course of a vehicle, unmistakably appropriating the vehicle for a use unrelated to the master's interest, and for the exclusive purpose of aiding a third person in distress, such a deviation amounts to a temporary leaving of the scope of employment, and the immediate and succeeding acts are not chargeable to the master."

The evidence in the case at bar, when considered most favorable to the trial court's judgment, reveals that Arnold, while in the course of employment by E. L. Farmer & Company, stopped his truck and trailer at nighttime with most of it on the paved part of the highway, did not leave his truck prior to the collision, told Brines he would not help him get his car out of the bar ditch and while his truck and trailer were stopped on the highway, the other motor vehicle in question ran into the back end

**894**

of Arnold's truck and trailer and killed the two men. According to the record, appellants did not meet the requirements of the rule stated in the Texas case that they themselves relied upon as well as the same rule stated in similar cases in other jurisdictions. Spradley v. United States, D.C., 119 F.Supp. 292; Harrison County Motor Car Co. v. Clarke, 232 Ky. 820, 24 S.W.2d 595; Boalbey v. Smith, 339 Ill.App. 466, 90 N.E.2d 238; Marshall v. Nugent, 1 Cir., 222 F.2d 604, 58 A.L.R.2d 251.

In any event, the trial court was justified in finding and concluding that under the venue Statutes both appellants were guilty of negligence committed in Cochran County and that the evidence did not support appellants' claims here made and in holding venue of both cases in Cochran County under the record presented and the provisions of the venue Statutes as construed by the Texas courts. Appellants' points of error are all therefore overruled and the judgment of the trial court is affirmed.