[Civ. No. 32322.   Second Dist., Div. One.   Dec. 16, 1968.]

ADOLFO S. CALDERON, Plaintiff and Appellant, v. DIS-
PATCH TRUCKING CO., INC. et al., Defendants and
Respondents.

J. B. Mandel for Plaintiff and Appellant.

McBain & Morgan, Angus C. McBain and Elmer O. Docken for Defendants and Respondents.

FOURT, J.—This is an appeal from a judgment of nonsuit in a personal injury damage action and an attempted appeal from an order denying a motion for a new trial.

Plaintiff brought the action September 25, 1962, in Los Angeles against Los Angeles County and the respondent herein. In the complaint plaintiff alleged generally that Figueroa and Temple Streets in Los Angeles are public streets, that on September 26, 1961, he was an occupant in an ambulance owned by Los Angeles County and operated by an employee of the county, "travelling in a ~~northerly~~ direction on Figueroa Street, near the intersection with Temple Street." that "defendants John Doe I and John Doe II operating a truck owned by the defendant Dispatch Trucking Co., in a southerly direction on said Figueroa Street, caused certain injuries to the plaintiff . . ." (At the time of trial plaintiff moved to interlineate the complaint to show that the ambulance was traveling "in a southerly direction, not northerly"—the court granted the motion.) It was alleged that the Does were the agents, servants and employees of the Dispatch Trucking Company and were in the course of their employment at the time of the accident, that defendants negligently drove and operated the vehicles so as to cause them to collide and that plaintiff was injured. He sought general and special damages. At the time of trial plaintiff moved to dismiss as against the County of Los Angeles and an order of dismissal was signed and filed. A jury was selected and evidence was taken. Because of the nature of the case we deem it proper to make a rather extensive statement of the facts as evidenced by the testimony of the witnesses. Cecil Palmiter testified that he at the time and place in question was driving an ambulance for the County of Los Angeles and was taking some outpatients (among them the plaintiff) to their respective homes, that the ambulance was being driven south on Figueroa Street near the intersection of Figueroa Street with Temple Street, that Temple Street goes over Figueroa Street where the streets intersect and on Figueroa Street there is a high wall

along the on-ramp ". . . so that you can't see anything coming down that on-ramp, and as we got down to the end of that ramp . . . then I saw this truck alongside of me. On the left side of me there was a car so there was no place for me to go there and I seen he was getting closer to me and I braked to get over behind this other car, but as I started to move in behind this other car, the truck, the trailer of the truck struck the right rear corner of the ambulance . . ." Palmiter stated that the vehicle which had struck the ambulance was of light green color, gondola type which unloaded from the bottom. He further described the vehicle and said that it "was a truck, two trailers, two semis" with a load of dirt, and, "There was no name or no'number that I could see." He further stated that the vehicle continued on and failed to stop. Palmiter testified that he then drove the ambulance onto the right side of the road, checked the patients, called his dispatcher and told the dispatcher where the trucks were coming from, ". . . right over in this area where the medical or musical center was being built, . . ." The dispatcher told the ambulance driver "not spend too much time, but to go over and see if I could find out what truck it was." Palmiter stated, "There were trucks coming in and out of there, oh, every few minutes. As soon as they could get one loaded, it would leave and another one would come. . . . They were. They all looked alike. The trailer, the tractors were individual tractors." The trucks, all similar in color and characteristics, were carrying dirt from the Music Center area. The witness remained in the area for a short period and then went back to the hospital with the patients to have them checked over. The accident was at about 3 p.m. The witness was asked by counsel for plaintiff, "Did you ever have an opportunity to talk to the driver of the other vehicle?" and Palmiter answered, "I wouldn't know who the driver was." He said that he recognized the truck and trailer.

A résumé of plaintiff's testimony is as follows:

At the time of the accident, he, the plaintiff, was in a little chair in a corner of the ambulance. He could see the street through the windows in the doors and at the top of the ambulance—he could see very well. "I saw one truck approaching us. I saw the cabin and I saw part of the truck." He didn't see the trailer in that moment. The truck had a color, green, and it had a yellow color too, and the truck was like the car they use in trains, in the railway, to take freight—(witness meant gondolas). Further that after stopping, checking the

patients (and calling his dispatcher according to the driver) Mr. Palmiter then took them to the Music Center. Palmiter talked to people there but he, Calderon, did not hear what was said.

Calderon was questioned by his own counsel and answered as herein set forth:

"Q. Did you notice any trucks similar to the truck there?

"A. Yes. They were all truck [sic], they were similar in color and in, and in—

"Q. Description?

"A. Description, and I noted that one has a number 10 in the left door.

". . . . . . . . . . . . . .

"Q. Mr. Calderon, do you recall when you were in the ambulance, at the time that the truck and trailer was to your left, did you notice any number on the bus, any number on the trailer?

". . . . . . . . . . . . . .

"A. No, not that moment. I only saw the color and the, how the truck was, the shape of the truck, how that was a gondola, like gondola and the color. I saw—the driver, I can't recognize him, only that he was a white man.

". . . . . . . . . . . . . .

"Q. By MR. MANDEL: Now, the trucks and trailers that you saw at the Civic Center, you have described them as Mr. Palmiter indicated?

"A. Similar. They were exactly the same with the truck that hit the ambulance.

"Q. Yes. Now, did you notice any other trucks or trailers there other than these trucks that you have mentioned that you saw at the Music Center?

"A. Well, Mr. Palmiter took us to the Music Center.

"THE COURT: You may answer the question yes or no. Did you see any trucks there?

"THE WITNESS: Yes, I saw another truck there.

". . . . . . . . . . . . . .

"Q. By MR. MANDEL: You saw several trucks at the Music Center?

"A. Yes.

"Q. And these were described by you and by Mr. Palmiter. They were exactly the same as the truck that you saw involved in this accident?

"A. Yes, sir.

"Q. All right. Now, with reference to these trucks, did you see any other trucks, other than those that were similar?

"A. No. I don't understand.

"Q. Well, were they all, all that you saw, similar to the ones that you saw involved in this accident?

"A. Yes, sir.

"Q. Now, did you ever see the, a number on any of the trucks or trailers?

"A. In that moment when Mr. Palmiter opened the door . . . when we were there in the Music Center, one truck was right in front of us and he had a 10 number on the left side of the door in the cabin.

"THE COURT: He had a No. 10 on the door. He already testified to that.

"THE WITNESS: Yes.

"Q. BY MR. MANDEL: Did you ever see this No. 10 again?

"A. Only there.

"Q. You saw one there at that time?

"A. Yes.

"THE COURT: He said only there.

"Q. BY MR. MANDEL: Oh, you saw it at the Civic Center?

"A. Yes.

"    .    .    .    .    .    .    .    .    .    .    .    .

"Q. Now, in addition to the No. 10, what else did you see on that truck?

"    .    .    .    .    .    .    .    .    .    .    .    .

"A. The name of the company, Dispatch Trucking Company.

"Q. That is, the words were on the truck?

"A. And 3353 Gilman Road and the No. 10 in the middle and then in the back, El Monte, El Monte, California." (It is to be noted that the last seven questions and answers show rather clearly that the truck with defendants' name and other data on it was not the truck involved in the accident.)

The last witness was a doctor who testified with reference to plaintiff's injuries and medical care and attention.

The plaintiff rested his case and a motion for a nonsuit was made by defendant and granted. This appeal followed.

The joint pretrial statement placed in issue the identity, ownership, control and permissive use of the truck as well as the identity of the truck driver and the question of his agency and employment. Defendant further augmented the pretrial statement by contending that it had no knowledge of the accident.

We are persuaded that the motion was well taken and a judgment of nonsuit was proper. It is noted that plaintiff

made no offer or attempt to establish agency or permissive use upon the part of the driver of the truck. There is no evidence to identify the truck involved in the accident, or the owner or the driver of it, or to establish agency, employment or permissive use with respect to the vehicle. None of the vehicles at the "center" was identified as the one involved in the accident. Plaintiff made no showing of the identity and location of the jobsite referred to as the music center, the presence or absence of other similar activities elsewhere in the area, the existence or nonexistence of some contract for dirt removal by the defendant, whether defendant in fact owned a truck or a fleet of trucks, whether defendant's truck or trucks were being used exclusively or otherwise on a project in the area, whether defendant had trucks uniform in color and design, whether the colors were factory originated or peculiar to an owner and so on.

The trial court stated the problem concisely when he said upon making his ruling granting the nonsuit: "The case should have been prepared in advance."

■ It is appropriately stated in *Pacific Tel. & Tel. Co.* v. *Wellman*, 98 Cal.App.2d 151, 154 [219 P.2d 506] : "There are two factors or elements in section 402(a) both of which must be present and proved in order that a person other than the driver of a vehicle be held responsible for damages resulting from negligence in the operation of the vehicle: (1) It must have been owned at the time of the accident by such person, and (2) it must have been operated with the permission, express or implied, of such owner. [Citation.] Each factor is as important as the other." (See also *Vallejo* v. *Montebello Sewer Co. Inc.*, 209 Cal.App.2d 721 [26 Cal.Rptr. 447].)

Also in *Duff* v. *Schaefer Ambulance Service, Inc.*, 132 Cal. App.2d 655, 667 [283 P.2d 91], it is said: "In general, where it is established that the driver of a car was the servant or agent of defendant employer and that his use of the vehicle was a contemplated incident of his agency, before liability is fastened on the employer the plaintiff must show that at the time of the injury complained of the servant was engaged in performing a service for the master or some act incidental thereto. [Citations.]" (See also *Kish* v. *California State Auto Assn.*, 190 Cal. 246 [212 P. 27].)

■ A nonsuit is properly granted where the plaintiff offers no evidence to show who was the driver or owner of the vehicle alleged to have negligently caused the injury claimed

by plaintiff. (*Ely* v. *Beal,* 100 Cal.App.2d 743 [224 P.2d 479].)

Under the circumstances of this case the order denying a motion for a new trial is a nonappealable order. The attempted appeal from such order is dismissed. (See *Armenta* v. *Churchill,* 42 Cal.2d 448 [267 P.2d 303].)

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.