836

ELLIS v. AMERICAN HAWAIIAN
S. S. CO.
No. 5556–PH.

District Court, S. D. California,
Central Division.

May 18, 1948.

David A. Fall, of San Pedro, Cal., for libelant.

Overton, Lyman, Plumb, Prince & Vermille, of Los Angeles, Cal., for respondent.

HALL, District Judge.

Upon appeal, 9 Cir., 165 F.2d 999, 1002, the judgment of this court in favor of respondent was reversed and the case was "remanded for the determination of appellant's wages and maintenance and cure for his injuries."

Wages are determined at $464.60 less withholding tax of $42.80 and social security tax in the sum of $4.65.

Maintenance is allowed at the rate of $4.00 per day from Jan. 6th, 1946 to and including September 30th, 1946.

■ Interest is a matter of judicial discretion. The Stjerneborg (Dampskibs-

selskabet Dannenborg v. Signal Oil & Gas. Co. of California), 9 Cir., 1939, 106 F.2d 896; The West Hartland, 9 Cir., 1924, 2 F.2d 834.

■ The exercise of that discretion in this case requires the disallowance of interest to libelant, for the following reasons:

First: The liability was unliquidated and unascertainable as to amount, both as to wages and as to maintenance until this determination. The wages claimed in the libel as filed were at the rate of $275 a month, but at trial it was stipulated that libelant's wages were at the rate of $202 per month, and the libel was then amended accordingly. The maintenance claimed was at the rate of $5.50 per day and was and is not finally settled as to such rate until the making of this order allowing $4 per day as the rate of maintenance. The situation is thus not present where only the question of legal liability is uncertain with the amount certain, or where litigation is forced by a respondent solely for the purpose of delay.

Secondly: Nor is this a case where the liability is fixed but the amount is uncertain. It will be recalled that the trial court followed Jackson v. Pittsburg Steamship Company, 6 Cir., 1942, 131 F.2d 668, 670, which held that the owners were not liable for maintenance, cure and wages, unless it was shown that the injured seaman "acted without gross negligence or misconduct, and his own wilful wrong-doing." Such gross negligence, misconduct or wilful wrongdoing, was characterized in that opinion as I read and understand it, as an "intervening cause" created by the injured party. And the trial court in this case held that under all of the evidence, after seeing libelant and hearing his testimony, that the libelant "created an intervening cause of his own volition which caused the accident." While the Jackson case cited with approval Collins v. Dollar S. S. Lines, D.C., 23 F.Supp. 395, and Meyer v. Dollar S. S. Lines, 9 Cir., 49 F.2d 1002, which were both criticized in Aguilar v. Standard Oil Co., 1942, 318 U.S. 724, 63 S.Ct. 930, 87 L.Ed. 1107, the trial court in this case pointed out that the Aguilar case announced the doctrine (318 U.S. 732, 63 S.Ct. 930, 934, 87 L.Ed. 1107) that the

liability of a shipowner "covers all injuries and ailments incurred without misconduct on the seaman's part." That doctrine was quoted with approval by the Ninth Circuit in Sundber v. Washington Fish & Oyster Co. et al., 138 F.2d 801, at page 803. Which doctrine is not in conflict with the holding of the Jackson case. The Aguilar case was decided four months after the Jackson case, without criticism of it. Moreover, in the Collins case the seaman was injured in a baseball game with no evidence that he was misusing any of the instrumentalities thereof, such as occurred in the instant case, where the libelant, an expert diver, dove headfirst for the third time into an on shore swimming pool, with a maximum of three feet of water at the deepest part, and evidence of only a few inches in the shallowest part. And in the Meyer case the accident was *on board ship,* which ship was completely in the control of the owner.

The foregoing is not said in criticism of the decision of the Circuit Court of Appeals herein, 9 Cir., 165 F.2d 999, but is indicative of the fact that, in my opinion, the legal liability of respondent was uncertain, not only at the time it was incurred, but at the trial, and at all times until the decision of the Circuit Court of Appeals on appeal, and that such legal uncertainty requires that discretion should be exercised against the allowance of interest.

Third: The mandate does not require the allowance of interest. The discretion which must be exercised as to the allowance of interest, therefore, is my discretion. While the Circuit Court considered the case de novo on the ground that "the facts stated by appellant are undisputed," my discretion on the allowance of interest is not to be made from the cold and inanimate printed words in a record but must be made from an appraisal of the whole case, including the oral testimony of the libelant. Times without number juries have been and are being instructed by Judges that in weighing the testimony of a witness the presumption that a witness speaks the truth may be repelled by the manner in which he testifies, or by the character of his testimony, and that from these things the jury may believe or disbelieve the whole or any part of the testimony of any witness. I do not think the Circuit Court intended that such rules of weighing testimony should be followed by juries but not by judges who see and hear witnesses testify. I saw and heard the libelant testify, and concluded that his act of diving into the pool was an intervening cause of his injury caused by his own volition. And while no mention was made of it from the bench (decisions must be made frequently by trial judges, without opportunity for formalizing their conclusions, or buttressing them by a detailed analysis of the evidence), one of the imponderables which entered into that conclusion was the fact that the testimony of the libelant, as to the quantity or effect of beer he drank or the amount of water in the pool, lacked verity. I could not and cannot now reasonably understand how the libelant, whom I saw and heard, an expert diver, would have dived head first from a diving board into a swimming pool, with no more than three feet of water in it, unless he was either drunk, or partially drunk, or otherwise acted on his own volition. (The deposition of Raeish differed from the testimony of libelant, as to the depth of the water in the pool. Raeish testified that the pool tapered from a shallow to a deep end, and that the water at the shallow end "might have been a foot, or just a few inches" in depth, whereas the libelant's testimony as to the depth of the water varied from "up to his first rib" at the deep end, to the statement that he did not know how deep the water was, to another statement that it was at least three or four feet.)

For the foregoing reasons, the exercise of discretion requires the disallowance of interest.

One other matter requires comment. The opinion and mandate required the allowance of wages, maintenance, *and cure.* The only cost of cure alleged in the libel, was the sum of $12.00, which the libelant waived at the trial (tr. page 16, line 12). And the testimony was that the libelant had received cure from the Respondent, and had incurred no expense for medical care, and claimed no future medical care. Counsel at the hearing on the mandate stipulated that there had been raised no question of cure on appeal, either in the record, or briefs, or argument, and further stipulated

that libelant did not, and was not seeking cure, and offered absolutely no evidence as to the cost of cure. I shall, therefore, interpret the opinion and mandate as to the requirements of cure, to be a typographical error, and not a mandate that this court must allow cure when it has already been given and whether sought by the libelant or not.

Counsel will prepare and submit an appropriate judgment in accordance with this Memorandum.