*By order of the Bankruptcy Appellate Panel, the precedential effect of this decision is limited to the case and parties pursuant to 6th Cir. BAP LBR 8013-1(b). See also 6th Cir. BAP LBR 8010-1©.*

**File Name:  12b0008n.06**

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

| | |
|---|---|
| In re:   GAINEY CORPORATION, *et al.*,     ) | |
| ) | |
| Debtors.     ) | |
| _____ ) | |
| ) | |
| BARRY P. LEFKOWITZ, as Liquidation Trustee     ) | |
| of the Gainey Companies Liquidation Trust,     ) | |
| ) | No. 11-8038 |
| Plaintiff-Appellant,     ) | |
| ) | |
| v.     ) | |
| ) | |
| MICHIGAN TRUCKING, LLC, fka  Michigan     ) | |
| Truck Acquisition, LLC dba M Trucking, LLC,     ) | |
| ) | |
| Defendant-Appellee.     ) | |
| _____ ) | |

Appeal from the United States Bankruptcy Court
for the Western District of Michigan at Grand Rapids.
Bankruptcy Case No. 08-09092, Adversary Proceeding No. 10-80483.

Argued: August 7, 2012

Decided and Filed: September 11, 2012

Before: FULTON, McIVOR, and SHEA-STONUM, Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

**ARGUED:** Louis P. Rochkind, JAFFE RAITT HEUER & WEISS, PC, Southfield, Michigan, for Appellants.  Michael S. McElwee, VARNUM, LLP, Grand Rapids, Michigan, for Appellee.  **ON BRIEF:** Louis P. Rochkind, Eric D. Novetsky, JAFFE RAITT HEUER & WEISS, PC, Southfield,

Michigan, for Appellants. Michael S. McElwee, VARNUM, LLP, Grand Rapids, Michigan, for Appellee.

---

**OPINION**

---

THOMAS H. FULTON, Bankruptcy Appellate Panel Judge. The Liquidation Trustee in six jointly administered chapter 11 cases appeals an order of the bankruptcy court which dismissed his adversary complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

## I.  ISSUES ON APPEAL

The main issue presented by this appeal is whether the bankruptcy court erred in dismissing the Appellant's adversary complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The Appellant is the Liquidating Trustee for the Debtors. In his complaint, the Appellant sought a declaratory judgment that the Appellee, Michigan Trucking LLC, the purchaser of Debtors' assets, was liable to Debtors' insurer for deductibles billed after the asset sale, but related to accidents which occurred prior to the asset sale. The bankruptcy court held that the Appellant failed to state a claim for relief because the Appellee could not be held liable for deductibles which were related to accidents[1] which occurred prior to the sale of Debtors' assets. The issue before the Panel is whether the bankruptcy court erred in holding that the Appellant failed to state a claim for relief on the grounds that the APA, the Sale Order, the Plan and the Order Confirming the Plan established that the Appellee had no obligation to reimburse the insurer for deductibles related to accidents that occurred prior to the sale to the Appellee.

For the reasons that follow, we affirm the bankruptcy court's May 6, 2011 order dismissing the Appellant's adversary complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for relief.

---

[1]For purposes of this opinion, the term "accidents" includes tort claims, accident loss liabilities, cargo loss claims, or any other insured loss which occurred prior to December 22, 2009.

2

## II. JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide this appeal. The United States District Court for the Western District of Michigan has authorized appeals to the Panel and no party has timely elected to have this appeal heard by the district court. 28 U.S.C. § 158(b)(6), (c)(1). A final order of the bankruptcy court may be appealed as of right pursuant to 28 U.S.C. § 158(a)(1). For purposes of appeal, a final order "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (citations omitted). An order dismissing an adversary complaint under Federal Rule of Civil Procedure 12(b)(6) is a final, appealable order. *Kaye v. Agripool, SRL* (*In re Murray, Inc.*), 392 B.R. 288, 292 (B.A.P. 6th Cir. 2008).

A bankruptcy court's order dismissing a complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is reviewed *de novo*. "Under a *de novo* standard of review, the reviewing court decides an issue independently of, and without deference to, the trial court's determination." *Menninger v. Accredited Home Lenders* (*In re Morgeson*), 371 B.R. 798, 800 (B.A.P. 6th Cir. 2007) (citing *Trenish v. Norwest Bank Minn., N.A.* (*In re Periandri*), 266 B.R. 651, 653 (B.A.P. 6th Cir. 2001)).

Contract interpretation is a matter of law which is reviewed *de novo*. *Bender v. Newell Window Furnishings, Inc.*, 681 F.3d 253, 259 (6th Cir. 2012); *Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1195 (Del. 1992). The determination of whether a contract, or a term therein, is ambiguous is also a question of law reviewed *de novo*. *Official Comm. of Unsecured Creditors v. Dow Corning Corp.* (*In re Dow Corning Corp.*), 456 F.3d 668, 676 (6th Cir. 2006). Insurance policies are interpreted under principles of contract law. *Upjohn Co. v. N.H. Ins. Co.*, 476 N.W.2d 392 (Mich. 1991).

Although a bankruptcy court's interpretation of its own orders is to be given "significant deference," the standard of review varies depending on the type of order being reviewed or the type of interpretation the bankruptcy court performed. *Terex Corp. v. Metro. Life Ins. Co.* (*In re Terex Corp.*), 984 F.2d 170, 172 (6th Cir. 1993). Interpretation of "an agreed order, like a consent decree,

3

is in the nature of a contract, and the interpretation of its terms presents a question of contract interpretation" which is reviewed is *de novo*. *City of Covington v. Covington Landing Ltd. P'ship*, 71 F.3d 1221, 1227 (6th Cir. 1995). Despite this standard of review, some measure of deference is still given to the court's interpretation of its order because "few persons are in a better position to understand the meaning of a consent decree than the district judge who oversaw and approved it." *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 372 (6th Cir. 1988) (citations omitted) (internal quotation marks omitted).

In contrast, a bankruptcy court's interpretation of orders in which it does "not rely on or interpret the Bankruptcy Code" is reviewed under an abuse of discretion standard. *Terex Corp.*, 984 F.2d at 172. This standard of review applies to a bankruptcy court's interpretation of a confirmation order. *Id.*

### III.   FACTS

On October 14, 2008, six related entities, Gainey Corporation, Gainey Transportation Services, Inc., Super Service, Inc., Freight Brokers of America, Inc., Lester Coggins Trucking, Inc., and Gainey Insurance Services, Inc. (collectively "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the Western District of Michigan. Pursuant to an October 16, 2008 bankruptcy court order, the cases are being jointly administered.

The Debtors are privately held Michigan corporations which "primarily provide[d] nationwide over the road trucking, freight hauling, and related freight brokerage and logistics services" in the U.S. and Canada. (Disclosure Statement at § 3.1, Bankr. Case No. 08-09092, ECF No. 1507.) Collectively, the Debtors employed "approximately 1,700 people" and "operate[d] a total ongoing fleet of approximately 1,600 tractors and 3,200 trailers." (*Id.*) Given the nature of their operations, "the Debtors incur[red] claims on account of bodily injuries, property damages, and claims for worker's compensation suffered in connection with automobile accidents involving the Debtors' Rolling Stock and matters involving its employees." (*Id.* at § 3.4(d).) At all times pre- and

4

post-petition, the Debtors maintained liability insurance with several different insurers to cover these claims. The Debtors administered the insurance claims themselves through Gainey Insurance Services, Inc.

On October 9, 2009, the Debtors filed a motion to sell substantially all of their assets in accordance with 11 U.S.C. § 363(f). The sale was to occur through use of a bidding process whereby potential purchasers would submit proposed asset purchase agreements. Any assets not purchased by the successful bidder would remain part of the Debtors' bankruptcy estates. In seeking authority to sell its assets, the Debtors sought to assume certain executory contracts and leases and then assign them to the purchaser.

The Debtors filed their First Amended Joint Plan of Reorganization on October 13, 2009, ("Plan"). As part of the plan confirmation process, a Liquidation Trust was established, and Barry P. Lefkowitz ("Appellant") was appointed as the Liquidation Trustee. Creation of the Liquidation Trust was provided for in the Plan, and the Plan incorporated by reference the Liquidation Trust Agreement ("Trust Agreement"). The Liquidation Trust was set up primarily to administer any assets not sold prior to confirmation, pursue causes of action and insider causes of action that were not sold, resolve any objections to claims and interests, wind down the Debtors' affairs, and "pay expenses of the Liquidation Trust, Claims and Interests arising under . . . the Plan, including distributions to all Administrative Expense Claims . . . ." (Plan at § 5.3(c), Bankr. Case No. 08-09092, ECF No. 1506.)

In addition to providing for the creation of the Liquidation Trust, the Plan also provided that certain assets would not be sold through the bidding process but would instead be transferred to the Liquidation Trust. These assets included, among other things, "the Excluded Cash." As defined by the Plan, the "Excluded Cash" consisted of

> $5,000,000 of the Cash held by the Reorganized Debtors after the closing of the Sale, to be distributed to the Liquidation Trustee, . . .on the date the Confirmation Order becomes a final order, . . . to fund payments to the holders of Allowed Administrative Expense Claims . . . , Priority Tax Claims, Secured Tax Claims, Other Priority

5

Claims, Unsecured Liability Claims . . . Cure Payments as may be required under the Sale Order, and the fees and expenses incurred in connection with (a) winding down the Debtors' businesses and related affairs, (b) objecting to Claims, and (c) otherwise carrying out the terms of the Plan and the Liquidation Trust Agreement.

(*Id.* at § 1.45.). The Plan further provided that the Appellant was required to pay, from the $5,000,000.00 excluded cash, "[a]llowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtors postpetition, to the extent not already paid by the Debtors prior to the Effective Date, . . . in full." (*Id.* at § 2.2.)[2]

The Plan incorporated the Trust Agreement by reference and specifically designated the Appellant as the Liquidation Trustee. The Trust Agreement recognized that the Plan contemplated creation of the Liquidation Trust and that the Trust Agreement was executed to facilitate implementation of the Liquidation Trust as contemplated under the Plan. Section 2.05 of the Trust Agreement stated that "[t]he Liquidation Trustee accepts the Trusts Assets and agrees to hold and administer the Trust Assets for the benefit of the Beneficiaries, subject to the terms and conditions of this Trust Agreement, the Plan and the Confirmation Order." (*Id.* at § 2.05.)

On November 2, 2009, Michigan Trucking Acquisition, LLC, ("Appellee") and the Debtors entered into an Asset Sale and Purchase Agreement ("APA") which provided for the sale of substantially all of the Debtors' assets to the Appellee for $77,800,000.00. The purchase included all contracts, other than those that had been rejected. The assumed contracts included insurance contracts covering bodily injuries and property damage that were in existence at the time of the closing of the sale. The assumed insurance contracts were for the policy year June 1, 2009 through May 31, 2010. The policies contained a "Deductible Liability Coverage Endorsement" which provided:

---

[2]The "Effective Date" was defined in the Plan as "the first day following the day that the Confirmation Order becomes a Final Order." (Plan at § 1.40, Bankr. Case No. 08-09092, ECF No. 1506.)

6

> To settle any claim or "suit" [the insurer] may pay all or any part of any deductible shown in the Schedule. If this happens, you must reimburse us for the deductible or the part of the deductible we paid.

(Deductible Liability Coverage Endorsement at 2, Adv. Proc. No. 10-80483, ECF No. 21-5.) According to the Deductible Endorsement Schedule, the deductible was $10,000.00 per accident.

The Appellee's purchase of the Debtors' assets also included "all credits, prepaid expenses, etc." which included money the Debtors had given to the insurer to "be drawn down to satisfy, or partially satisfy the Debtors' obligations to pay the deductible amounts (or other permitted charges under the various insurance policies)." (Mem. Op. at 4-5, Adv. Pro. No. 10-80483, ECF No. 35; APA at § 2.1(a)(vii).) The APA also provided that the Appellee would provide claims service and administer all insurance claims following the closing of the sale.

Section 2.4 of the APA is entitled "Assumption of Assumed Liabilities: Exclusion of Excluded Liabilities." Subsection (a)(i) of that section provides:

> On the Closing Date, Purchaser shall assume and agree to pay, perform and discharge when due only the following liabilities and no other liabilities of any Seller or the Business (i) all liabilities and obligations of Sellers relating to the Purchased Assets, including liabilities and obligations under the Assumed Contracts, *but only to the extent such liabilities and obligations first arise and are related to periods subsequent to the closing.*

(APA at § 2.4(a)(i), Adv. Proc. No. 10-80483, ECF No. 15-1) (emphasis added). The assumption of the assumed liabilities was to take effect upon the closing of the sale. Section 2.4(c) of the APA provided that

> [e]xcept as otherwise expressly assumed by Purchaser pursuant to Section 2.4(a) hereof, Purchaser shall not assume or pay, perform or discharge, nor shall Purchaser be responsible, directly or indirectly, for any other debts, obligations, accounts or trade payables, Contracts, or liabilities of any Seller . . . .

7

(*Id.* at § 2.4(c).) Neither "liabilities" nor "obligations" were defined in the APA.[3] The APA provided that the agreement was to "be construed, performed and enforced in accordance with, and governed by, the internal laws of the State of Delaware." (*Id.* at § 16.2.)

The auction of the Debtors' assets was conducted on November 16, 2009, at which time the Appellee was deemed the successful bidder. The bankruptcy court entered an order approving the sale and the APA on November 19, 2009 ("Sale Order").

> Effective upon the Closing Date, all persons and entities who have held, hold or may hold any Claim (as defined under section 101(5) of the Bankruptcy Code) are forever prohibited and enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral or other proceeding against the Purchaser, its successors and assigns, or the Purchased Assets, with respect to any . . . (b) successor liability . . . .

> Except for the Permitted Liens and Assumed Liabilities,[4] the Purchaser shall not have any liability of the Debtors or their estates arising under or related to the Purchased Assets. Without limiting the generality of the foregoing, the Purchaser shall not be liable for any claims against the Debtors or any of their predecessors or affiliates, and the Purchaser shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, any theory of . . . successor or transferee liability, . . ., whether known or unknown as of the Closing Date, now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated with respect to the Debtors or any obligations of the Debtors arising prior to the Closing Date, . . . . The Purchaser has given substantial consideration under the APA for the benefit of the holders of Encumbrances.[5] The consideration given by the Purchaser shall constitute valid and valuable consideration for the releases of any potential claims of successor liability of the Purchaser, which releases shall be deemed to have

---

[3]The Plan and the Trust Agreement also failed to define "liability" or "obligation."

[4]"Assumed Liabilities" are those liabilities set forth in § 2.4(a) of the APA.

[5]The term "Encumbrances" was defined in the Sale Order as "any and all liens (statutory or otherwise) . . . and "obligations [and] liabilities . . . whether known or unknown, . . . filed or unfiled, scheduled or unscheduled, . . . contingent or non-contingent, liquidated or unliquidated, . . . whether arising prior to or subsequent to the commencement of the bankruptcy cases, and whether imposed by agreement, understanding, law, equity or otherwise, including claims otherwise arising under doctrines of successor liability . . . other than the Permitted Liens and Assumed Liabilities under the APA . . . .." (Sale Order at ¶ T, Bankr. Case No. 08-09092, ECF No. 1652.)

been given in favor of the Purchaser by all holders of Encumbrances against the Debtors or the Purchased Assets.

(Sale Order at ¶¶ 23 and 24, Bankr. Case No. 08-09092, ECF No. 1652.) Paragraph 28 of the Sale Order further provides that "[n]othing contained in any order of any type or kind entered in (i) this chapter 11 case or (ii) any related proceeding subsequent to entry of this Order shall conflict with or derogate from the provisions of the APA or the terms of this Order." (*Id.* at ¶ 28.) Paragraph 38 provided that "[t]o the extent there are any inconsistencies between the terms of this Order and the APA . . ., the terms of this Order shall control." (*Id.* at ¶ 38.) The sale of the Debtors' assets to the Appellee closed on December 22, 2009.

On December 31, 2009, the bankruptcy court entered an order confirming the Plan ("Confirmation Order"). The Confirmation Order referenced the sale of the Debtors' assets to the Appellee as well as the establishment and operation of the Liquidation Trust. Pursuant to ¶ 47 of the Confirmation Order, "the terms of the Plan and this Confirmation Order shall be deemed binding upon the Debtors, the Reorganized Debtor, the Liquidation Trust and Liquidation Trustee . . . ." (*Id.* at ¶ 47.)

On July 19, 2010, the Appellant, on behalf of the Liquidation Trust, filed an adversary proceeding against the Appellee seeking a declaratory judgment that the Appellee is required to reimburse the insurer for deductibles related to "auto liability or cargo liability claims, based on mishaps involving the Debtors' tractors or trailers" that occurred prior to the closing of the sale to the Appellee. (Resp. to Mot. to Dismiss at 4, Adv. Proc. No. 10-80483. ECF No. 21.) According to the Appellant's complaint, "none of the Obligations [to pay the deductible] was (i) asserted, known or in existence prior to the Closing [of the Sale to the Appellee], and/or (ii) reported on the open accounts payable listings of the Debtors (as of the date of Closing provided to the Liquidation Trustee by the Debtors." (Adv. Cplt. at ¶ 30, Adv. Proc. No. 10-80483, ECF No. 1.) The Appellant also alleged that any deductibles that became reimbursable after the sale was finalized were not obligations that arose prior to the closing of the sale. The Appellant sought an order requiring the Appellee to administer the liability claims and to pay the insurer the reimbursement obligation

9

associated with the deductible endorsement. Lastly, the Appellant sought damages for the Appellee's alleged failure to administer the obligations as liability claims under the insurance contracts when they came due.

On August 18, 2010, the Appellee filed a motion to dismiss the adversary proceeding pursuant to Federal Rule of Civil Procedure 12(b)(6). The Appellee asserted that the APA and the Sale Order specifically provided that the Appellee would have no successor liability and would be responsible for contractual liabilities or obligations only to the extent such liabilities and obligations first arose and were related to periods subsequent to closing. Because the deductibles at issue were tied to accidents that occurred prior to the closing of the sale, the Appellee claimed that the deductibles arose out of pre-closing accidents for which the APA and the Sale Order specifically provided the Appellee was not liable. The Appellant filed a response to the Appellee's motion to dismiss on October 25, 2010.

The bankruptcy court conducted a hearing on the Appellee's motion to dismiss on November 16, 2010. On May 6, 2011, the bankruptcy court issued an opinion and order granting the Appellee's motion. In the opinion, the bankruptcy court framed the determining issue as follows:

> When does a tort claim, or loss, first arise: when the tort or loss occurred or when the request or demand for payment is made upon an insurance company which provides coverage for an accident or loss?

(Mem. Op. at 2, Adv. Proc. No. 10-80483, ECF No. 35.) After examining the APA, the Sale Order, the Plan and the Confirmation Order, the bankruptcy court concluded that the Appellee's obligation to reimburse the insurer for the deductible arose when the tort or loss occurred. Consequently, the bankruptcy court determined that any deductibles that were related to pre-closing losses were pre-closing obligations for which the Appellee was not responsible under the terms of the APA and the Sale Order.

In making its determination, the bankruptcy court stated that it "is called upon to interpret its orders and determine when a claim 'first arises,' when an 'obligation' begins its existence, or

10

when a 'liability is created." (Mem. Op. at 16, Adv. Proc. No. 10-80483, ECF No. 35.) The bankruptcy court began its analysis by looking to the Bankruptcy Code to determine when a claim first arises within the meaning of the Plan, the Confirmation Order, and the Sale Order. After reviewing the definitions of "claim" and "debt" as set forth in 11 U.S.C. § 101, the bankruptcy court concluded that because "debt" is defined as "liability on a claim," "claim" and "debt" are coextensive terms. Accordingly, the court concluded that

> when words such as 'liabilities,' 'obligations,' 'claims,' 'expenses,' "debts," or "amounts" are utilized in the prior court orders, to the extent a word means "claim" or "debt," all these words shall be construed to be coextensive.

(Mem. Op. at 15, Adv. Proc. No. 10-80483, ECF No. 35) (citing Sale Order at ¶ 24, APA §§ 2.4(a)(1) and (c), 5.1(a)(vii) and 10.2(b), and Plan §§ 1.3 and 2.2). The court also stated that "amount," "liability," "expense," or "obligation" are all synonyms for the term "debt". (Mem. Op. at 16, Adv. Proc. No. 10-80483, ECF No. 35.)


Relying on the decision of the U.S. Court of Appeals for the Third Circuit in *Jeld-Wen, Inc. v. Van Brunt* (*In re Grossman's Inc.*), 607 F.3d 114 (3d Cir. 2010), the bankruptcy court stated that "a 'claim' can exist under the Code before a right to payment exists under state law." (Mem. Op. at 20, Adv. Proc. No. 10-80483, ECF No. 35.) Consequently the bankruptcy court determined that if a "claim" existed before the closing of the sale, any resulting obligation to reimburse the insurer for the deductible also existed before the sale closed. Conversely, if a "claim" did not exist until after the sale closed, then any resulting obligation to pay the deductible did not exist until that time either. Because all of the claims at issue in this case existed before the sale of the Debtors' assets to the Appellee was final, the bankruptcy court concluded that the Appellee was not obligated to "pay the related and coextensive debts, whether to the tort claimants or the insurance company for the deductible amounts." (*Id.* at 21.) In a footnote, the bankruptcy court also noted that the Appellee's obligation to administer the insurance claims did not obligate it to pay "related losses or deductible amounts out of its own pocket." (*Id.* at 21, n. 9.)

11

The bankruptcy court also determined that analyzing the issue under contract principles would "yield[] the same result." (*Id.* at 21.) Because a confirmed plan is a new contract between the debtor and its creditors, a court is required to interpret a confirmed plan " 'under long-settled contract law principles.' " (*Id.*) (citing *Official Comm. of Unsecured Creditors v. Dow Corning Corp.* (*In re Dow Corning, Corp.*), 456 F.3d 668, 676 (6th Cir. 2006)). If there is no ambiguity in a confirmed plan, then a court must enforce it as written.

In interpreting the Plan in this particular case, the bankruptcy court stated that it was required to look to the Confirmation Order, the Plan, the Sale Order, and the APA because they were "all intertwined." (Mem. Op. at 21, Adv. Proc. No. 10-80483, ECF No. 35) (citing *Wonderland Shopping Ctr. Venture Ltd. P'ship v. CDC Mortg. Capital, Inc.*, 274 F.3d 1085, 1092 (6th Cir. 2001)). If no ambiguity existed in any of those documents, then the court stated it was obligated to enforce it according to the terms. Because all of the relevant documents provided that the Appellee would only be responsible for liabilities or obligations that arose and were related to events occurring after the sale closed and because the documents also provided that the Appellee would not be liable for any claims against the Debtors which arose prior to the closing of the sale, the bankruptcy court determined that

> [t]he court has no difficulty in interpreting the combined language in the governing court orders as mandating that [the Appellee] is *not* liable for claims or obligated to pay any related debts for any and all tort claims, accident liabilities, cargo loss claims or other types of claims that arose from occurrences (or omissions) prior to December 22, 2009, i.e., the closing of the sale.

(Mem. Op. at 22, Adv. Proc. No. 10-80483, ECF No. 35.)

The bankruptcy court also determined that the Appellant, as the Liquidation Trustee, was bound by the court's prior orders, the Plan, the Confirmation Order and the Trust Agreement. Because (1) the Plan created the Liquidation Trust, incorporated the Trust Agreement, and designated the Appellant as the Liquidation Trustee, (2) the Trust Agreement referenced the Plan, (3) the Plan contemplated the Sale Order which incorporated the APA, (4) the Confirmation Order acknowledged the Liquidation Trust and (5) § 2.05 of the Trust Agreement specifically stated that

12

the Appellant would "hold and administer the Trust Assets . . . subject to the terms and conditions of this Trust Agreement, the Plan, and the Confirmation Order," the Appellant was bound by the terms of all the relevant documents and orders. Consequently, the bankruptcy court concluded that the Appellant was also bound by the court's interpretation of its prior orders.

Because the terms of the APA, the Sale Order, the Plan, and the Confirmation Order were unambiguous and because the Appellant was bound by the provisions in those documents, the bankruptcy court concluded that the Appellant's complaint failed to state a cognizable claim for relief. Accordingly, the bankruptcy court granted the Appellee's motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

The Appellant filed a timely notice of appeal of the bankruptcy court's opinion and order on May 19, 2012.

## IV. DISCUSSION

The issue before the Panel is whether the bankruptcy court erred in dismissing the Appellant's complaint on the grounds that the APA, the Sale Order, the Plan and the Confirmation Order established that the Appellee had no obligation to reimburse the insurer for deductibles related to accidents that occurred prior to the sale of the Debtors' assets to the Appellee.

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to move for dismissal of a complaint prior to filing a responsive pleading.[6] Such a motion "challenges the legal theory of the

---

[6] Rule 12 provides, in pertinent part:

> (b) **How to Present Defenses.** Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following by motion:

complaint, not the sufficiency of any evidence" which may be discovered. *Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc.*, 988 F.2d 1157, 1160 (Fed. Cir. 1993). "The purpose of the rule is to allow the court to eliminate actions that are fatally flawed in their legal premises and destined to fail . . . ." *Id*. (citing *Neitzke v. Williams*, 490 U.S. 319, 326-27, 109 S. Ct. 1827, 1832 (1989)). A complaint survives a Rule 12(b)(6) motion if the "[f]actual allegations [are] enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007) (internal citations omitted). A complaint need only provide enough facts to "state a claim to relief that is plausible on its face." *Id*. at 570.

In the face of a Rule 12(b)(6) motion, a complaint must be construed in the light most favorable to the plaintiff, the allegations of the complaint must be accepted as true, and all reasonable inferences must be drawn in favor of the plaintiff. *Tam Travel, Inc. v. Delta Airlines, Inc.* (*In re Travel Agent Comm'n Antitrust Litig.*), 583 F.3d 896, 903 (6th Cir. 2009). " '[T]o survive a motion to dismiss, the complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory.' " *Id*. (quoting *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007)). The court need not, however, "accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegation will not suffice." *Id*. (internal citations omitted) (internal quotation marks omitted.)

To determine whether the Appellant's complaint failed to state a plausible claim for relief, the Panel must determine if the bankruptcy court correctly concluded that the obligation to reimburse the insurer for any deductibles arises when the accident occurred, rather than when the deductible becomes payable under the Deductible Liability Endorsement.

---

. . . (6) failure to state a claim upon which relief can be granted . . . .

A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed.

In the APA, the Appellee agreed to assume liabilities and obligations under the insurance contracts, "*but only to the extent such liabilities and obligations first arise and are related to periods subsequent to the closing.*" (APA at § 2.4(a)(i), Adv. Proc. No. 10-80483, ECF No. 15-1.) (emphasis added). The Deductible Liability Endorsement provides that if the insurer pays the deductible, "[the insured] must reimburse the [insurer] for the deductible or the part of the deductible [the insurer] paid." (Deductible Liability Endorsement at 2, Adv. Proc. No. 10-80483, ECF No. 21-5.)

Neither the APA nor the Sale Order defined when liabilities and obligations arose. Additionally, the copy of the insurance policy submitted by the Appellee in the main bankruptcy case did not define when liabilities or obligations arose. To answer the question of when the obligation to pay deductibles arose, the bankruptcy court analogized the terms "obligation" and "liability" to the terms "claim" and "debt." Under the Bankruptcy Code,

> (5) The term "claim" means--
>
>> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
>>
>> (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.
>> . . . .
>
> (12) The term "debt" means liability on a claim.

11 U.S.C. § 101(5) and (12). The Bankruptcy Court concluded that the insurer's right to payment was identical to a claim as defined by the Bankruptcy Code. Using that analysis the insurer's right to payment on its claim arose at the time the debt was created, which was at the time the accident occurred. Since the Appellee only assumed liability for liabilities and obligations which arose subsequent to the closing, the insurer's right to payment was from the Debtors not from the Appellee.

The Appellant raises several arguments as to why the bankruptcy court erred in holding that the Appellee had no liability to pay deductibles related to accidents which occurred prior to the sale of the Debtors' assets to the Appellee. The Panel will address each of the arguments below.

A.  *The Appellant argues that the bankruptcy court erred because it failed to construe the APA under Delaware law.*

Section 16.1 of the APA contained a "choice of law" provision which required the APA to be construed using Delaware law. The Appellant argues that the bankruptcy court's failure to explicitly cite Delaware law resulted in an incorrect conclusion. While it is true that the bankruptcy court did not explicitly reference Delaware law, the Appellant's argument fails because the application of Delaware law results in the same conclusion reached by the bankruptcy court. Applying Delaware law, unambiguous contract terms are to be given their ordinary and plain meaning. *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del. 1997). When terms are not defined within a contract, "[u]nder well-settled case law, Delaware courts look to dictionaries for assistance in determining the plain meaning of" undefined terms. *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 738 (Del. 2006).

According to Black's Law Dictionary, "liability" is defined as

> 1. The quality or state of being legally obligated or accountable; legal responsibility to another or to society, enforceable by civil remedy or criminal punishment . . . 2. (often pl.) A financial or pecuniary obligation; debt . . . .

Black's Law Dictionary (9th ed. 2009). "Debt" in turn is defined as "liability on a claim; a specific sum of money due by agreement or otherwise." *Id.* "Claim" is defined as "[t]he assertion of an existing right; any right to payment or to an equitable remedy, even if contingent or provisional." *Id.* "Claim" can include a matured claim, an unliquidated claim, or a contingent claim. *Id.*

"Obligation" is defined in Black's Law Dictionary as

> 1. A legal or moral duty to do or not do something. . . . 2. A formal, binding agreement or acknowledgment of a liability to pay a certain amount or to do a certain

16

thing for a particular person or set of persons; esp., a duty arising by contract. . . . See duty (1); liability (1). . . .

*Id.* The definition of "obligation" references "duty." As defined, "duty" means "[a] legal obligation that is owed or due to another and that needs to be satisfied; an obligation for which somebody else has a corresponding right." *Id.*

Using these definitions, under Delaware law, a party becomes liable to another party when the party first has a legal obligation to the other party. The Debtors' insurance contracts stated that the deductible to be paid by the insured was $10,000 per accident. The insurance policies further provided that in settling a claim related to an accident, the insurer could pay the deductible. The policy further states: "If this happens, you [the insured] must reimburse us for the deductible or the part of the deductible we [the insurer] paid." Deductible Liability Coverage Endorsement ¶ 2. Under the insurance contract, the Debtors became legally obligated to their insurers at the time the accident occurred because every accident gave the Debtors' insurer a right to collect the deductible either directly or after the insurer settled the claim. Under either Delaware law or general contract law, the insurer's right to collect deductibles related to accidents which occurred prior to the sale was from the Debtors. Since the conclusion reached by the bankruptcy court is the same regardless of whether Delaware law was cited, the bankruptcy court's ruling is not erroneous.

B.    *The Appellant argues that the court failed to properly apply 11 U.S.C. § 365(k).*

Paragraph 16 of the Sale Order states that after closing, "the Debtors shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further liability under the Assumed Contracts." Section 365(k) of the Bankruptcy Code provides that "[a]ssignment by the trustee to an entity of a contract or lease assumed under this section relieves the trustee and the estate from any liability for any breach of such contract or lease occurring after such assignment." 11 U.S.C. § 365(k). Section "365(k) relieves a debtor of liability for contractually created obligations only upon a complete assignment of rights and duties under the contract." 2 Norton Bankr. L. & Prac. 3d § 46.33 (2012). The Appellant's argument that 11 U.S.C. § 365(k) requires the Appellee to pay

deductibles related to accidents which occurred prior to closing is only successful *if* the deductibles at issue in this case are liabilities arising *after* the assignment of the contract. For all the reasons set forth above, the bankruptcy court correctly ruled that the liability for the deductibles arose *before* the Debtors assigned the insurance contracts to the Appellee. To the extent that the insurer is owed deductibles for accidents prior to closing, the bankruptcy court did not err in holding that 11 U.S.C. § 365(k) was inapplicable. The Appellee is only liable for deductibles relating to accidents which occurred *after* Debtors assigned the insurance contracts to the Appellee.

C.      *The Appellant argues that the language in the "Deductible Liability Coverage Endorsement" creates liability on the part of the Appellee for deductibles related to accidents which occurred prior to the sale.*

Section C of the Deductible Liability Coverage Endorsement states "[t]o settle any claim or 'suit' [the insurer] may pay all or any part of any deductible shown in the Schedule. If this happens, you must reimburse us for the deductible or the part of the deductible we paid." The Appellant argues, based on this language, that the insured has no obligation to the insurer until the insurer seeks reimbursement for a deductible the insurer paid in settling a claim. The Appellant's argument ignores the plain language of the section he quotes. The insurer may elect to pay the deductible to settle a claim. The claim exists at the time the accident occurs. The insured either pays the deductible prior to the settlement of the claim or after the settlement of the claim when the insurer seeks reimbursement, but clearly, the obligation to pay the deductible arises at the same time as the claim arises. The bankruptcy court did not err when it concluded that the insurance contract did not give the insurer a right to collect deductibles related to accidents which occurred prior to the sale from the Appellee.

D.      *The Appellant argues that the bankruptcy court erred in finding that the "prepaid expenses" and deposits purchased by the Appellee did not include the obligation to pay the deductibles that were billed after the sale closed.*

The APA stated that the Appellee's purchase of the Debtors' assets included "all credits, prepaid expenses, etc." which included monies the Debtors had prepaid to the insurer to "be drawn down to satisfy, or partially satisfy the Debtors' obligations to pay the deductible amounts (or other

permitted charges under the various insurance policies)." (Mem. Op. at 4-5, Adv. Pro. No. 10-80483, ECF No. 35; APA at § 2.1(a)(vii)..) The APA also provided that the Appellee would provide claims service and administer all insurance claims following the closing of the sale. While the Panel can only speculate as to the specific purpose of this language, as has been set forth previously, all of the documents at issue in this case firmly establish that the Appellee was not assuming obligations or liabilities related to pre-sale accidents or injuries. Additionally, in the paragraph describing the purchase of the prepaid expenses, there is no qualifying language stating that the deposits the Appellee was purchasing were to be used for any type of liability, let alone liabilities arising out of accidents which occurred prior to the asset sale. The prepaid expenses were also not designated as "excluded assets." Under both Michigan and Delaware law, a court cannot enforce an implied contractual obligation "when the express terms of the contract do not suggest" that the implied obligation was inadvertently omitted. *Cincinnati SMSA Ltd. P'ship v. Cincinnati Bell Cellular Sys., Inc.*, No. C.A. 15388, 1997 WL 525873 , *5 (Del. Ch. Aug. 13, 1997); *Clark Bros. Sales Co. v. Dana Corp.*, 77 F. Supp. 837, 843 (E.D. Mich. 1999). Nor can a court enforce an implied contractual obligation when "the implied obligation sought to be enforced conflicts with the express terms" of the written contract. *Cincinnati SMSA Ltd. P'ship*, 1997 WL 525873 at *5; *Scholz v. Montgomery Ward & Co.*, 468 N.W.2d 845, 849 (Mich. 1991).

E.      *Lastly, the Appellant argues that the bankruptcy court erred in construing the APA, the Plan, the Sale Order and the Confirmation Order together.*

The Appellant alleges that "it is appropriate to construe the language of one document with the language of another only in the absence of an indication of a contrary intention and only if the documents are contracts executed on the same date among the same parties that deal with related matters." (Appellant Br. at 47.) The cases cited by the Appellant, however, do not support this conclusion. In *Simon v. Navellier Series Fund*, No. 17734, 2000 WL 1597890 (Del. Ch. Oct. 19, 2000), the court recognized that "in construing the legal obligations created by [a] document, it is appropriate for the court to consider not only the language of that document but also the language of contracts among the same parties executed or amended as of the same date that deal with related matters." *Id.* at *7 (citing *Crown Brooks Corp. v. Bookstop, Inc.*, CIV. A. No. 11255, 1990 WL

26166 (Del. Ch. Feb. 28, 1990)). The bankruptcy court in this case examined what it called "interrelated writings" including the Confirmation Order, the Plan, the Sale Order, and the APA, in making its determination that there is "nothing plausible" to support the Appellants's position that the Appellee is liable for liabilities or obligations that arose prior to the closing of the sale. Although not executed on the same day, all of these documents were relevant to the issue before the bankruptcy court.

Moreover, when considering a Rule 12(b)(6) motion to dismiss, "the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and *exhibits attached to the complaint*, also may be taken into account." *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001) (citation omitted). "[C]ourt filings and docket entries" are considered matters of public record which may be consulted in deciding a Rule 12(b)(6) motion. *Taylor v. Javitch, Block & Rathbone, LLC*, No. 1:12CV708, 2012 WL 2375494, *2 n.2 (N.D. Ohio June 22, 2012); *Malin v. JPMorgan*, No. 3:11–CV–554, 2012 WL 899946, *3 (E.D. Tenn. Mar. 12, 2012).

The Panel finds that none of the arguments raised by the Appellant demonstrate that the bankruptcy court erred in dismissing the Appellant's complaint for failure to state a claim.

## V. CONCLUSION

For the reasons set forth herein, the Panel affirms the bankruptcy court's May 6, 2011 order dismissing the Appellant's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.